## JOHNSON v. ST. LOUIS DISPATCH COMPANY, APPELLANT.

1. **Libel**: CHARGE OF GRAND LARCENY. To publish of one, that he had disgraced the office he had filled, that he had been accused of stealing a horse, that he had sued the persons so accusing him, and that a jury had found for the defendants, obviously imputes the crime of grand larceny to the person of whom the publication is made.

2. ———: REPETITION OF CHARGE MADE BY ANOTHER. Where one hears another make a charge which he repeats, he will not be exempt from liability, unless at the time of repeating the words, he affords the person of whom the charge is made a cause of action against the original author.

3. ———: PUBLISHING CORPORATION. A publishing corporation is liable for publishing a libel.

| 65 | 539 |
| 125 | 525 |
| 65 | 539 |
| 139 | 88 |
| 65 | 539 |
| 152 | 38 |

*Appeal from St. Louis Court of Appeals.* The case will be found reported in 2 Mo. App. Rep. 565.

*Marshall & Barclay* for appellant.

*Lee & Adams and Henderson & Shields* for respondent.

HENRY, J.—This was a suit commenced in the circuit court of St. Louis county to recover damages for an alleged libel, published in the St. Louis Dispatch, a newspaper

owned and published in the city of St. Louis. The following was the publication :

"Then there was H. B. Johnson, who disgraced the office now filled by H. Clay Ewing. He was once accused of stealing a stud horse in Lafayette county. He sued the party of accusers, and at the trial, where four federal office-holders made a part of the jury, a verdict was brought in for the defendant."

There was a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action, and the point relied upon was that the foregoing publication did not charge a criminal offense. The demurrer was sustained at special term. On appeal to general term the judgment was reversed, from which defendant appealed to the Court of Appeals, where the judgment of the general term was affirmed, and defendant prosecuted an appeal to this court.

That the publication imputed the crime of grand larceny to the defendant is clear. That is the obvious import

1. LIBEL: Charge of grand larceny. of the language. In *Button v. Heyward*, 8 Mod. 24, Pratt, C. J., said, "We are to understand words in the same sense as the hearers understand them, but when words stand indifferent and are equally liable to two distinct interpretations, we ought to construe them *in mitiori sensu*, but we will never make any exposition against the plain, natural import of the words." In *The King v. Watson et al.*, 2 T. R. 199, Mr. Justice Buller said : "upon occasions of this sort I have never adopted any other rule than that frequently stated by Lord Mansfield to juries, desiring them to read the paper stated to be a libel and say whether in their minds it conveys the sense imputed." The language here was but a publication to the world that plaintiff had been accused of stealing a horse and that he instituted a suit to recover damages for slander and that the jury found him guilty by finding a verdict for defendant. It alleges that plaintiff has disgraced the office he had filled. How? He was accused of stealing a stud horse in Lafay-

ette county, and sued for damages, and, on a trial by jury, their verdict was for the defendant. What is the inference which men of common understanding would draw from the language ? Clearly that plaintiff had stolen the horse. Those good citizens who read the publication and believed it to be true, would have shunned the plaintiff as one tainted with an infamous crime. If such language be not actionable, a newspaper may libel a man with impunity. In *Delany v. Jones*, 4 East P. C. 191, the publication was as follows :

"This is to request that if any printer or other person can ascertain that James Delany, Esq., some years since residing at Cork, late lieutenant in the North Lincoln Militia, was married previous to nine o'clock in the morning of the tenth of August, 1799, they will give notice &c., and receive the reward." Lord Ellenborough left it to the jury to say whether the advertisement imputed a charge of bigamy to the plaintiff. The stereotyped formulas of slander, " they say," " it is said," " it is generally believed," are about as effectual modes of blasting reputation as distinctly and directly to charge the crime.

That one heard another make the charge which he repeats, will not screen him unless at the time of repeating the words, he affords the plaintiff a cause of action against the original author. Starkie on Slander, 69. For instance, where defendant said, " A woman told me that she heard one say that Meggs, his wife, had poisoned Griffin, her first husband, in a mess of milk," it was held actionable. Putting the charge in an interrogative form, will not avail the defendant. The words " Did you hear that J. S. is guilty of treason?" were held actionable, as directly imputing to J. S. the crime of treason. We shall not extend these remarks, but adopt the opinion of the Court of Appeals in this case as a very clear and satisfactory statement of the law. The press should not, and under our constitution cannot, be muzzled. Too much cannot be said in its praise for the good it has accom-

plished in the world. The utmost latitude consistent with the rights of others should be given it to criticise the conduct both of public men and private citizens, but the peace and good order of society demand that it be kept within the bounds of legitimate criticism. "A newspaper proprietor (says Townshend, in his work on slander and libel, page 343,) is not privileged as such in the dissemination of news, but is liable for what he publishes in the same manner as any other individual."

We think that there can be no doubt that a publishing corporation is liable in an action for a libel. As remarked
3. ——; publish- by the Court of Appeals in this case, "if the
ing corporation. contrary were the law, there would be almost perfect immunity for the newspaper press, most of the large newspapers in the world being the property of corporations." *Gillet v. Mo. Valley R. R. Co.* 55 Mo. 315, (overruling *Child v. The Bank of the State of Missouri*,) cited by the Court of Appeals, fully sustains the views of that court on this subject. All concurring, the judgment of the Court of Appeals is affirmed and the cause remanded to the Circuit Court of St. Louis, in which it originated.

AFFIRMED.