STATE OF MISSOURI, Respondent, v. PETER M. DERRY, Appellant.

### Kansas City Court of Appeals, February 8, 1886.

1. CRIMINAL LAW — INDICTMENT — SUFFICIENCY OF, AFTER VERDICT. Where in an indictment for slander, it was not alleged in the usual connection that the words were *spoken in the hearing of any one*, yet if it is substantially so alleged in a subsequent part of the indictment, this is sufficient, especially after verdict.

2. —— EVIDENCE—HOW FACTS SHOWN.—The existence of a fact may be shown by facts and circumstances in evidence, as well as by direct testimony.

3. —— —— AVERMENTS OF INDICTMENT—VARIANCE—CHARGE OF SLANDER—DEFENCE.—It is not necessary that the indictment should allege more than the substantive matter of the charge, giving, in case of slander, the whole sentence and sense. The sense of the words employed, the manner and attending circumstances of the utterance, and any explanation made by the defendant afterwards in the same conversation, are all matters of defence.

4. —— CONSTRUCTION OF SECTION 1590, REVISED STATUTES.—Section 1590, of the Revised Statutes of this state, applies as well to those who *repeat* a verbal slander, as to those who falsely and maliciously *speak* it, as appears from the manifest purpose of the statute, and by its terms.

5. EVIDENCE — PRIVILEGED COMMUNICATION — RULE CONCERNING. Every one who believes himself to be possessed of knowledge, which, if true, does, or may, affect the rights and "interests of another, has the right, in good faith, to communicate such as his belief to that other." Town. on Slan. and Lib., sect. 241. But notwithstanding the communication may be of a privileged character, if the defendant was actuated in the whole affair by malice, and his statement was false, he cannot escape.

APPEAL from Carroll Circuit Court, HON. JAMES M. DAVIS, Judge.

*Affirmed.*

Statement of case by the court.

This is an indictment, under section 1590, Revised

Statutes, for falsely and maliciously charging one Fannie White with fornication.

The defendant was convicted, and sentenced to pay a fine of five hundred dollars. He has appealed to this court.

The evidence tended to show that the defendant was either engaged to be married to said Fannie, or had been paying her attention as a suitor. Some time prior to the finding of this indictment the defendant told his brother, J. W. Derry, that the reason he withdrew his attentions from her was that she had had sexual intercourse with some hired hand. The evidence for the state left it much in doubt as to whether defendant, at the time of the utterance, gave the name of his informant, or as to any explanatory language. He claims, and testified, that he did but repeat the slander, and that he gave his author. But he admits, and all the proof shows, that he knowingly gave the name of the wrong man as his author, and when taken before the man whom he gave as his informer, was contradicted by him.

The defendant himself gave circulation to the derogatory rumor by going to Fannie White and telling her that he had heard some bad story about her, and thereby starting her father out to investigate the charge and trace out its author.

HALE & SONS and J. W. SEBREE, for the appellant.

I. The indictment is bad; it does not sufficiently charge a publication. It is not alleged that the language was spoken *to* J. W. Derry, nor in his *hearing*. 2 Chit. on Plead. 635; *Hailey v. Fuller*, 2 Hun (N. Y.) 519; *Broderick v. James*, 3 Daly (N. Y.) 481.

II. There is no evidence that the person spoken of was an unmarried woman. This is one of the essentials to possible guilt.

III. The indictment charges that defendant *spoke* the scandalous language; and all the evidence discloses that he merely *repeated* what had been told him. This is a material variance, and operates to prejudice of de-

fendant in making a successful defence. *Watson v. Mussick*, 2 Mo. 29. At common law written slander by the author, or one repeating it, is alike punishable by fine, etc. 2 Chit. on Bl. 151; Roscoe on Crim. Evid. 597. And sections 1591 and 1592, Revised Statutes, in respect to *written* slander, is declaratory of the common law, and repeals the common law upon the subject of libel. And section 1592 makes it an offence for one who *repeats* a written slander as well as the author of it. But verbal slander is not indictable at common law. Hence, section 1590, Revised Statutes, is purely a statutory offence, and must be strictly construed. And this does not in express language, nor by necessary implication, make it *any offence to repeat* a verbal slander. *Maguires v. Savings Association*, 62 Mo. 346.

IV. What defendant said to his brother was a confidential communication, and is not an indictable offence, nor could the legislature constitutionally make it so. No power of legislation can destroy the rights of friends, husbands and wives, parents and children, brothers and sisters to confidentially communicate with each other. Commerce, business, matters of state, domestic and social relations, depend, in a large measure, for security and satisfaction upon secret, confidential intercourse. Where a communication is made *bona fide*, in answer to inqui ries from one having an interest in the information sought, or where the relations between the parties  *  *  *  render it reasonable and proper that the information should be given, it will be regarded as privileged. *Lewis v. Chapman*, 16 N. Y. 374; *Clap v. Develin*, 35 N. Y. Sup. Ct. Rep. 170; *Jarvis v. Hathaway*, 3 Johns. 180; 2 Greenl. on Evid. (13 Ed.) 383, note 1; Wharton's Crim. Law, 845, *et seq.;* 1 East. Rep. 616–617, and cases cited.

V. Defendant was fined five hundred dollars and sentenced to three months in county jail. The punishment is excessive.

No brief appears on file for the respondent.

PHILIPS, P. J.—I. Objection is made to the indict-

ment on the ground that it does not allege that the words·
were spoken in the hearing of any one. It is true that·
in the first part of the indictment, where such averment
is usually made, it is only charged that the speaking was·
in the presence of J. W. Derry, etc. But this is fol-
lowed up in the succeeding portion of the bill with the
averment, that the defamatory character and meaning
imputed to the language, "was so understood by the said
J. W. Derry and others, in whose presence and *hearing*
the said false and slanderous words were so, as aforesaid,
by the said Peter M. Derry falsely and maliciously
spoken." This, we think, was sufficient, especially after·
verdict. *State v. Jansen*, 80 Mo. 97.

II. It is claimed that the record fails to show there
was any proof that Fannie White was an unmarried
woman, which was essential to support the charge of for-
nication. It is true no witness, in so many words, testi-
fied that she was a single woman; yet there were facts
and circumstances in evidence from which the jury could
well have found the existence of this fact had defendant
made any question of it by an instruction. The defend-
ant himself testified that he was engaged to her in a con-
tract of marriage, and was visiting her as a lady receiving·
attention from young men. She was in society as a girl
of twenty years of age. The evidence also shows that
she was an inmate of the family of her father, and was·
under his protection. The defendant raised no such ques-
tion either in any instruction, out of the eighteen asked
by him, nor in his motion for new trial. We cannot dis-
turb the verdict on this objection.

III. It is urged that there is a variance between the·
words alleged in the indictment and the proof. This
criticism is based on the assumption that the proof
showed that defendant merely stated that he heard so·
and so, whereas the indictment charges as if he uttered
the words without qualification. The record does not
support this objection. The defendant's brother, to
whom the words were spoken, testified that defendant
used the identical words affirmed in the indictment. And

the way in which the witness gave the language conveyed no impression that it was repeating the words of some one else. On inquiry as to his author, the defendant gave the name of one Wilson. It was not necessary that the indictment should allege more than the substantive matter of the slander, giving the whole sentence and sense. The sense of the words employed, the manner and attending circumstances of the utterance, and any explanation made by the defendant afterwards in the same conversation, were all matters of defence.

IV. In this connection we will dispose of the suggestion made, and enforced with much zeal, that as verbal slander was not indictable at common law, we must look alone to the statute for this offence, and as the statute does not in terms, or by necessary implication, make it an offence to repeat a verbal slander, therefore, if the defendant only repeated what somebody else told him or said, the indictment is not sustained.

If the statute merely limited the offence to bringing a false charge or accusation, there would be some plausibility in the position. But the statute (sect. 1590, Rev. Stat.) states the manner of preferring the false accusation, etc. "Every person who shall falsely and maliciously charge or accuse any female of * * * fornication * * * by falsely speaking of and concerning such female, in the presence and hearing of any other person, any false and slanderous words which shall impute to her any such offence," etc.

It is manifest from this statute that it was not more the originator of the slander struck at by the law-makers, than he who speaks it of and concerning such female.

The manifest purpose being to make the specified instances of verbal slander a misdemeanor, it would seem to be a reasonable construction to apply to it the common law rule that, "tale-bearers are as bad as tale-makers." Odgers, in his treatise on Slander and Libel, p. 161, illustrates this quite aptly by the colloquy in "The School of Scandal": "Mrs. Can.—But surely you would not be quite so severe on those who only repeat what they hear?

Sir Pet.—Yes, madam, I would have law merchant for them too ; and in all cases of slander currency wherever the drawer of the lie was not to be found, the injured party should have a right to come on any of the indorsers." Or, as put by Henry, J., in *Johnson v. St. Louis Dispatch Co.* (65 Mo. 541), "the stereotyped formulas of slander, 'they say,' 'it is said,' 'it is generally believed,' are about as effective modes of blasting reputation as to distinctly and directly charge the crime."

To bring the defendant within the rule of protection recognized by our supreme court for repeating slanderous words, it devolved upon him to show that at the time of speaking the words he gave the name of his author, and he should also give a cause of action against such third person by showing that he spoke the words falsely and maliciously, and that defendant believed what he had heard, and that he repeated the words only on a justifiable occasion. *Moberly v. Preston et al.*, 8 Mo. 463 ; *Johnson v. Dispatch Co.*, *supra*, 463.

The uncontradicted evidence is that the defendant did not give the true name of his author ; and so far from giving the injured party a cause of action against the originator, the defendant purposely withheld the name in order to screen him from responsibility.

And when the name of the real party, with whom he had any conversation affecting the good name of the woman, is discovered, this party flatly denies, under oath, the authorship. The defendant must stand as sponsor for the bastard offspring.

V. It is finally insisted that the communication made by defendant to his brother was privileged. It may be conceded that a communication made, *bona fide*, by one brother to another, in answer to an inquiry by the brother having an interest in the information sought, might be privileged. *Lewis v. Chapman*, 16 N. Y. 369 ; *Mott v. Dawson*, 46 Ia. 533.

"Every one who believes himself to be possessed of knowledge, which, if true, does, or may, affect the rights and interests of another, has the right, in good faith, to

communicate such as his belief to that other." Town. on Slan. and Lib., sect. 241; 2 Greenl. on Evid. (14 Ed.) sect. 420.

It is observable that the authorities speak of the communication being made to the party having an interest in knowing the fact. This interest, certainly, must be such as in some way or degree concerns and affects the character, the welfare, the just and reasonable prospects, the social relations and offices, or such like interests of the party to whom the communication is made.

It cannot be such interest as springs from prurient curiosity, or the appetite of the newsmonger. Had the defendant, who was paying attention to this woman, inquired of his brother what he knew, or had heard, of her character and deportment, the communication of the brother would clearly have been privileged. But whether the rule can be carried to the extent of this case, where the communication is voluntarily made to one not interested, apparently, further than to inquire why the defendant did not continue to visit a female acquaintance, is questionable, and not necessary to the determination of this case.

Notwithstanding the communication was of a privileged character, yet if the defendant was actuated in the whole affair by malice, and his statement was false, he cannot escape. *Lewis v. Chapman, supra,* p. 373. - This issue was fairly enough submitted to the jury, and by their verdict they found the malice and falsehood to exist. Nor is it clear how the defendant can take shelter under the plea that his statement to his brother was confidential, when both he and his brother testified that the seal of secrecy was never broken until done so by defendant's permission and direction.

Equally untenable is the suggestion that the woman and her friends gave voice and wing to this defamation. The defendant, as if inspired with hate and mischief, went to the very sanctuary of this woman's home, and threw the insinuation in her face, thereby as justly, as naturally, arousing all the curiosity and pride of her

womanhood. If the sleuth hounds of justice, led on by the outraged father, and hissed up by the wronged girl, ran hot and noisy on the scent of the slander, until all the neighborhood resounded with it, the defendant himself sprung the game.

Had he in the first instance observed what Odgers on Slander (p. 304), enjoins: "No charge should ever be made recklessly and wantonly, even in confidence; do not state a rumor as a fact, and in repeating a rumor be careful not to heighten its color, or exaggerate its extent, * * * confidential advice should be given seriously and conscientiously; it should be manifest that you do not take pleasure in maligning the plaintiff, but are compelled to do so in the honest discharge of a painful duty," this case would not be in court.

We have given the defendant's appeal careful consideration, and finding no substantial error in the record, the judgment is affirmed.   All concur.