## Charles Dillingham et al. v. Anthony Russell.

### No. 2601.

1. **Jurisdiction—Receivers.**—A receiver appointed by a United States court is subject to suit in any court having jurisdiction over the subject matter without the necessity of asking leave of the court which appointed the receiver. The custody of the property appertains exclusively to the court which appointed the receiver, but in another court may be established a debt against the receivership which will be recognized by the court which appointed the receiver. How the judgment shall be paid in adjusting equities between various creditors pertains exclusively to the court having custody through the receiver of assets.

2. **Practice—Evidence.**—Whether the admission and subsequent exclusion of improper testimony on the trial of a cause should afford ground for reversing a judgment must depend on a consideration of the facts in the particular case. It is only in cases where after a consideration of all the facts it is probable that the finding of the jury may have been influenced by the improper admission of the testimony that the judgment will be reversed.

3. **Damages—Common Carrier.**—When an employment is of such nature that the master is by contract, express or implied, under obligation to protect persons coming in contact with his servant from the servant's wrongful act, and the servant does to such person that which the master could not do or suffer to be done without violation of the duty of protection which rests upon him, or if the servant omits to do that which is requisite to the full discharge of the master's incumbent duty, then the master will be held responsible for the servant's wrongful or malicious act or omission. Whether the servant's wrongful act is either willful or malicious is immaterial in determining the liability of his employer to make actual compensation to the injured party. This doctrine is applicable to carriers of passengers, whether railway companies or receivers as such, and the duty of protection goes with the carrier's contract, however made, whereby the relation of carrier and passenger is established.

4. **Same—Master and Servant.**—If in the performance of any duty within the line of his employment the servant uses unnecessary force in doing an act lawful in

itself, and thereby commits a trespass or crime, the master is civilly liable in damages; but if the act be in itself illegal, however performed or by whomsoever done, then the master is not liable unless he advised or in some way participated in the malicious act. The malicious act of the servant when not done in the line of his employment or the performance of a duty imposed on him by his master will not be imputed to the master from the fact that with knowledge of the wrong done he was still continued in his former service.

5. **Same.**—In order to constitute one a wrong doer by ratification the original act must have been done in his interest or intended to further some interest of his own.

6. **Same—Ratification.**—It can not be held as matter of law that the mere retention of a servant who in the course of his employment and while improperly performing an act arising in the line of his duty inflicts a malicious wrong on another operates a ratification of his malicious act and thus fix his evil motive on his employer so as to render him liable in damages.

7. **Ex Post Facto Animus.**—The doctrine of ex post facto animus as a basis for exemplary damages characterized as an anomaly.  See opinion.

ERROR from Freestone.   Tried below before Hon. Sam. R. Frost.

This suit was brought against plaintiffs in error by the defendant in error, Russell Anthony, to recover both actual and exemplary damages for unjustifiable assault and ill treatment inflicted upon him while a passenger on the cars of the railway company by one of its conductors.

On the 23d day of July, 1887, defendant in error bought a ticket and boarded a train of the company at Richland station, in Navarro County, Texas, to go to Wortham, in Freestone County, Texas.   He remained standing on the platform of the car, where the conductor, one John Telfair, received his ticket and then ordered him to enter the car.   This Russell Anthony did not do, but replied to the conductor that he was warm and would remain on the platform and "take care of himself." After some altercation blows passed between the parties.   As to whether the request of the conductor to enter the car was courteous or whether he attempted to use force to compel defendant in error to enter the car the testimony is conflicting.   The conductor collected the tickets of the passengers on the train and then returned into the car in which defendant in error had taken his seat, and approaching him from the rear and cursing the defendant in error, struck him repeatedly, knocking him down, continuing to strike him until defendant in error's face and head were bruised and beaten and the blood was streaming from his wounds. In consequence of his injuries and treatment thus received defendant in error was unable to follow his occupation and was confined to his bed more or less for a period of thirty days and suffered great bodily pain. Plaintiff in error was afterwards continued in his employment.

Plaintiffs in error filed a plea to the jurisdiction of the court, which was overruled and the cause was tried by a jury, who rendered a verdict for defendant in error for $1000 actual and $2000 punitory damages.

Errors assigned and other facts appear in the opinion.

*O. T. Holt,* for plaintiffs in error.—The court in which jurisdiction first attaches retains it until the entire case is disposed of, and no other court can interfere.

The declaration of the servant after the transaction is not admissible against the principal.  Rocket Co. v. Clough, 20 Wall., 528; Adams v. Hannibal R. R. Co., 7 Am. and Eng. R. R. Cases, 414; East Tennessee R. R. Co. v. ———, 31 Id., 352; Sherman v. Delaware R. R., 31 Id., 15.

Where an agent commits an assault outside the scope of his duty his principal is not liable.  G. H. & S. A. Ry. Co. v. John Donahoe, 56 Texas, 162; Hays v. H. & G. N. Ry. Co., 46 Texas, 273; 26 Ind., 70; 5 Hun, 57; 42 Mo., 79; 19 Mich., 305.

There can be no ratification of the acts and conduct of another without a full knowledge of all the facts.  City of Laredo v. MacDonnell, 52 Texas, 511; Com. and Agr. Bank v. Jones, 18 Texas, 811; Vincent v. Rather, 31 Texas, 77; Owing v. Hull, 9 Pet., 607, 629; Bish. on Con., sec. 848; Story's Agency, 251.

*O. C. Kirven, B. H. Gardner,* and *Hume & Kleberg,* for defendant in error.—Any receiver of any property appointed by any court of the United States may be sued in any court in respect of any act or transaction of his in carrying on the business connected with such property without previous leave of the court in which such receiver was appointed, such suit being subject to the general equity jurisdiction of the court in which such receiver was appointed, so far as the same shall be necessary to the ends of justice.  24 U. S. Stats. at Large, pp. 553, 554; App. to 120 U. S. R., pp. 786–795.

A receiver's right to be sued in the court which appointed him is a personal privilege, and when he is sued in any other court he must plead his privilege *in limine,* otherwise he will be held to have waived it. High on Receivers, sec. 261.

The duty of the carrier toward a passenger is contractual, and among other implied obligations is that of protecting a passenger from insults or assaults by other passengers or by their own servants.  The rule which exempts the master from liability for acts of an agent done outside the scope of his employment has no application as between a common carrier and his passenger, for in such a case the duty continues without intermission until the relation of carrier and passenger is ended, and the carrier can not shirk or evade it by committing its performance to an agent, and is bound at all hazards absolutely to perform that duty, and is liable for a failure so to do in any respect whereby injury results to a passenger, whether such failure results from the negligence or from the willful, wanton, or criminal conduct of the agent to whom the duty is committed.  2 Wood's Law Rys., sec. 315 and authorities cited; Stewart

v. Brooklyn Crosstown R. R. Co., 90 N. Y., 588; Carpenter v. Boston, etc., R. R. Co. 97 N. Y., 494.

In cases where the injury to a passenger is the result of gross carelessness or the willful misconduct of the carrier's agent, and the carrier ratifies such act of his agent, the passenger in addition to his actual damages is entitled to such exemplary damages as the jury see fit to give.  I. & G. N. Ry. Co. v. Gilbert, 64 Texas, 536; 2 Wood's Law Rys., pp. 1243–1245.

STAYTON, CHIEF JUSTICE.—This action was brought by defendant in error, July 28, 1887, against plaintiffs in error, who were receivers appointed by a Circuit Court of the United States prior to the time the injury complained of was inflicted, and in possession of and operating the Houston & Texas Central Railway at the time plaintiff claims to have been injured.   It was brought to recover damages, actual and exemplary, on account of injuries resulting from an assault and battery made on him while a passenger in one of the cars, by the conductor in charge of the train and in the employment of the receivers.

There was a verdict and judgment in favor of defendant in error for $1000 as actual and $2000 as exemplary damages.

Plaintiffs in error by plea denied the jurisdiction of the court below on the ground that no court other than the one appointing them could exercise jurisdiction.

This was overruled, and correctly so, for whatever may be the true rule in suits brought against receivers, for necessity for leave to sue them in other courts, under the Act of Congress of March 3, 1887, receivers appointed by the courts of the United States are subject to suit without leave in any court having jurisdiction over the subject matter.

No court can interfere with the custody of property held by another court through a receiver, but may establish by its judgment a debt against the receivership, which must be recognized even by the court appointing the receiver, and is not open to revision by it if the court rendering the judgment had jurisdiction of the subject matter and the parties.

The manner in which a judgment so rendered shall be paid, and the adjustment of equities between all persons having claims on the property and effects in the hands of a receiver made, must necessarily be under the control of the court having custody through its receiver, but this does not affect the jurisdiction of other courts conclusively to establish by judgment the existence and extent of a claim.

On the trial the conductor testified as a witness, and on being interrogated stated that he did not tell A. W. Williams on the night after the difficulty, holding his ticket punch in his hand, "This is the thing I did the son of a bitch up with," and afterwards Williams was permitted to

state that the witness at time and place mentioned did make such a statement to him.

The evidence was objected to on the ground that the declarations of the conductor made subsequently to the difficulty were not admissible against the defendants.

After the evidence was admitted the court withdrew it from the consideration of the jury and instructed them not to consider it, but it is insisted that the judgment should be reversed because of its admission.

It is frequently the case that evidence is admitted which, on reflection, the trial court deems it proper to withdraw from the consideration of the jury, and in some cases such action ought to be held to cure the error, while in other cases the evidence might be of such character and the whole case so presented as to induce the belief that the jury may have been influenced by the erroneous admission of evidence although subsequently told by the court to disregard it. In the latter case the admission of evidence that ought to have been excluded might be ground for reversal, and in the former not.

The evidence of the witness Williams was not admissible for the purpose of proving that the conductor did strike the plantiff with his ticket punch; but it may have been relevant to the issue as to how the battery was made, and for the purpose of impeaching the evidence of the conductor to show that he had made statements out of court different from those made in court admissible.

If, however, the evidence was not admissible for any purpose we do not perceive that it was calculated to operate to the injury of the defendants, for from the testimony given by the conductor on the trial and from the testimony of McCartney and the plaintiff, there could be but little doubt that the conductor did use his ticket punch in the battery, and the language shown to have been used by him at the time of the difficulty showed as fully his animus at that time as possibly could the language testified to by the witness Williams.

It is urged that the court erred in charging that defendants would be liable if the acts of the conductor were willful and malicious.

There is no doubt that ordinarily the master is not liable for an injury resulting from the willful and malicious acts of his agent not done in the course of his employment. This is the rule in all cases in which the liability of the master depends on the sole fact that the person who inflicted the injury was in some business his servant; and if upon inquiry it be found that the act was not done while in the transaction of the master's business then the act is not to be deemed the act of the master, for as to that the wrongdoer was not his servant.

The rule, however, can not be applied in a case in which the master by contract express or implied is under obligation to protect the injured person from the servant's wrongful act as well as his own. When a duty is

thus imposed on the master the servant employed to discharge it is the representative of the master, for whose acts, whether of omission or commission, resulting in injury to the person entitled to have the duty performed the master must be held as fully responsible and liable to make at least actual compensation as though the act were his own personal act.

In such cases if the servant does what the master could not do nor suffer to be done without violation of the particular duty resting upon him, or if the servant omits to do that requisite to the full discharge of the master's incumbent duty, then the master must be held responsible for the servant's wrongful or malicious act or omission, for otherwise it would result that a master might relieve himself from obligation to perform a duty fixed by contract or otherwise by the employment of servants to conduct the business to which the duty attaches.

The master's obligation can not thus be avoided, and whether the servant's act violative of the master's duty be willful or malicious is a matter of no importance in determining the liability and obligation of the master to make actual compensation to the injured person.

It has been steadily held to be the duty of carriers of passengers to protect them, in so far as this can be done by the exercise of a high degree of care, from the violence and insults of other passengers and strangers and to protect them from the violence and insults of the carrier's own servants, and the inquiry whether this duty arises from contract or from the nature of the employment becomes unimportant, except that the duty goes with the carrier's contract, however made, whereby the relation of carrier and passenger is established. Ramsden v. Ry. Co., 104 Mass., 120; Bryant v. Rich, 106 Mass., 180; Croker v. Ry. Co., 36 Wis., 657; Stewart v. Ry. Co., 90 N. Y., 588; Sherley v. Billings, 8 Bush., 147; Railway v. Flexman, 103 Ill., 546; Railway v. Rector, 104 Ill., 296; Goddard v. Ry. Co., 57 Me., 202.

Under the facts of this case the court below properly held that the defendants as receivers were liable for injuries resulting from the willful or malicious acts of the conductor.

On question of exemplary damages the court instructed the jury as follows: ''You are instructed that to authorize a recovery of exemplary damages against the employer or master on account of an injury inflicted by an employe or servant, the wrongful act from which the injury resulted must be done by the servant or employe maliciously and under such circumstances as would also authorize the recovery of actual damages from the employer or master; and further, the act must be ratified by him. If the employer or master have a knowledge of the act and its character and still continued the employe or servant in his former position, such retention is a ratification of the act of the servant or employe.''

The last paragraph of the charge quoted was repeated in a subsequent charge. In those jurisdictions in which it is held that exemplary dam-

ages may be given against a corporation for injuries willfully or maliciously inflicted by its servants in all cases in which the willful or malicious act was done in the course of the business entrusted to the servant, whether the act be authorized or ratified by the corporation, the giving of the charge complained of would probably be deemed harmless if the acts complained of in this case can be said to have been in the line of the conductor's duties. In this State, however, that rule has not been adopted.

In Mays v. Railroad Company, 46 Texas, 272, which was a case in which the act complained of might properly have been held to have been done in the course of the employment of the servant, it was said: "If the malicious act of the agent is ratified or adopted; if there is carelessness in the selection of employes or in the establishment of regulations; if in short the corporation or its officers by whom it is controlled are guilty of some 'fraud, malice, gross negligence, or oppression,' the settled rules of law will hold it liable to exemplary damages, but in our opinion not otherwise." This ruling was followed in Railway Company v. Donahoe, 56 Texas, 162.

We have no disposition to reopen the question in view of the conflict in authority, and, following these decisions, the remaining inquiry on this branch of the case is, was the charge as to liability of appellants resulting from their ratification of the acts of the conductor called for by the facts of the case or correct as a legal proposition in any case?

It appears that appellee as a passenger entered a car on the road controlled by appellants, and that having stopped on the platform outside of the car he was informed by the conductor that this was a dangerous place and was requested to enter the car. As to whether this request was made by the conductor without insult and in proper manner the evidence is conflicting, as is it as to whether the conductor used forced in removing appellee from the platform to the inside of the car.

Be this as it may, it does appear that blows passed between the conductor and appellee immediately after the latter entered the car, and his evidence as well as that of the conductor tends most strongly to show that in this rencounter appellee was the aggressor and the conductor acting in his own defense.

They were then separated without any considerable injury to appellee, and we do not understand him to base this action on what occurred in the difficulty to which we have referred.

After that ended the conductor went on in the discharge of his ordinary duties and appellee took his seat among the passengers, but after a short time had elapsed the conductor returned to the car in which appellee was and there committed an assault and battery upon him, which at the time was unprovoked and made solely to avenge the insult or wrong the

conductor conceived had been done him in what he claimed was an unprovoked assault made upon him by appellee in the former difficulty.

The assault and battery there committed and the injuries resulting therefrom are made the basis of this action, and there is not the slightest ground for holding that it was committed in behalf of appellants, for their benefit, in their interest, or in the doing of any act necessary or proper to be done in the discharge of the duties imposed on the conductor. On the contrary the act complained of is shown to have been the willful and malicious act of the conductor, in violation of his duty to his employers and to the service as well as to the passenger.

Appellants as carriers are liable to appellee for actual damages, because there was a failure on their part, through the conductor or some other representative, to give that protection to the passenger which they as carriers of passengers are bound to give, and this liability does not depend on whether the servant's failure of duty was unintentional, willful, or malicious; but to make them liable for exemplary damages, if they stand on the same ground as other carriers, the willful or malicious act of their servant must have become in law their willful or malicious act.

The rule in reference to affecting the master with the willfulness or malice of a servant must be the same, whether the master be a corporation, a receiver in charge of the business and property of a corporation, or an individual.

If in performing any duty within the line of his employment the servant uses unnecessary force in doing an act lawful within itself, and thereby commits a trespass or crime, then the act may be deemed one for which the master is civilly responsible; but if the act be in itself illegal, however performed or by whomsoever done, then the master ought not to be held liable unless he advised or in some way participated in the unlawful act.

The court below charged that the act of the servant, with all of the servant's willfulness and malice, would be imputed to appellants, if with knowledge of his misconduct they kept him in their employment, and so without reference to whether the act was within the line of the conductor's duties or one illegal in itself without reference to the manner of its execution.

If there were no other ground on which appellants could be held liable for actual damages resulting from the injuries received by appellee from the battery made upon him by the conductor than that they had ratified his act, could their liability be fixed on that ground, however clear their subsequent approval of his act might be made to appear?

"In order to constitute one a wrongdoer by ratification the original act must have been done in his interest or been intended to further some purpose of his own." Cooley on Torts, 127; Wilson v. Barker, 4 B. & Ad., 271; Wilson v. Tumman, 6 Man. & Gr., 241; Broom's Legal Max.,

873; Wood's Master and Servant, 598; Bird v. Brown, 4 Exch., 798; Sutherland v. Sutherland, 69 Ill., 481; Railway Co. v. Broom, 6 Exch., 326; Moak's Underhill on Torts, 38.

In the case before us there can be no pretense that the act of the servant was done in the interest of appellants, under any pretense of authority from them, or to further any interest of themselves or the corporation whose business and property they were controlling, and there was no ground on which to base ratification, which is but an agreement express or implied by one to be bound by the act of another performed for him. If appellants could not be held to have ratified their servant's unauthorized, willful, malicious act, not done in their interest or for their benefit in fact or pretense, it is not perceived on what ground they can be held to be affected by the animus with which the servant committed the act, and unless they could be so affected there is no legal ground for awarding against them exemplary damages.

If the servant's act be one not authorized by the master or one not done in the exercise of a power fairly arising from the character of his employment, but be an act done for the use or benefit of the master, then the master may doubtless ratify the act of the servant through which a tort was committed; and it may be that in such case the ratification of the master would fix upon him the bad motive which prompted the servant's act and thus impose on the master a liability even for exemplary damages. It has been so held by courts that hold the master not liable for exemplary damages in all cases in which the servant is. Bass v. Railway Co., 42 Wis., 654. Such may be the effect of the decisions in this State to which we have referred, though there are contrary holdings. Sutherland v. Sutherland, 69 Ill., 481. Such a question, however, is not before us.

Relying as appellee does on the injury inflicted upon him by the conductor after he took a seat in the car, we are of the opinion under the evidence that he shows no case entitling him to exemplary damages under the decisions heretofore made in this State to which we have referred, and that a case is not shown in which the jury should have been charged that they might find appellants had ratified the act of the conductor.

If, however, the case were different and it appeared that the conductor's act was done in the course of his employment, giving to this any intendment arising from his position and the nature of his duties, even then it seems to us that it can not be held as matter of law that the mere retention of the conductor in the same position after knowledge of his misconduct operates a ratification of his willful and malicious act, and thus fixes his evil motive on his employers.

The whole doctrine of *ex post facto animus* as a basis for exemplary damages seems to us an anomaly. It goes further than to punish for evil motive, and condemns and punishes for evil afterthought imputed, which

the court below informed the jury existed as a matter of law if the conductor was retained in the service after knowledge of his misconduct.

There are cases which hold that retention in service under such circumstances amounts to ratification of acts that may be ratified, but it seems to us that this is not necessarily true, and that when ratification is an issue this should be left to the jury or court trying the cause under all the evidence, to be passed upon as any other fact in issue.

The charge given assumed that the act of the conductor was such as might be ratified and that the facts recited in the charge as matter of law amounted to ratification.

We think this was error.    This case does not call for it, and we are not now disposed to consider what bearing the retention of a servant in a position he has abused ought to have in determining the liability of his master for his past or subsequent acts.

It is urged that the actual damages awarded are excessive, but we think in view of the facts this is not true; but for reasons manifest we decline to discuss the facts bearing on that question.

For the errors noticed the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 19, 1889.