## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. MARTHA E. RUSSELL.

### No. 1433.

1. **Railway Company—Injury to Passenger Alighting from Train—Degree of Care.**—The testimony of plaintiff was, that in alighting from defendant's car she was pushed against the railing of the car and off the steps, and so injured, by two men who were quarreling on the platform. The evidence showed, that the usual custom of defendant was to have some one standing at the foot of the steps to assist passengers to alight; but it seems that no one was there when plaintiff alighted. The court charged, that "It is the duty of railway companies to exercise a high degree of care to enable their passengers to safely alight from their trains. The degree of care required is proportionate to the nature and risk of the business, and is such as would ordinarily be exercised by persons of great care and prudence under similar circumstances. The want of such care is negligence." *Held*, a correct charge.

2. **Same—Knowledge Imputed to Company.**—It is as much the duty of the railway company, by the exercise of a high degree of care, to safely land as it is to safely carry its passengers; and where the train conductor, if exercising proper care, must have known of a disorderly conflict between two men on the train, by reason of which a lady passenger was injured, the company is chargeable with knowledge of the danger threatening such passenger, and of the necessity of taking proper steps to avert it.

APPEAL from Denton. Tried below before Hon. D. E. BARRETT.

*R. C. Foster* and *A. E. Wilkinson*, for appellant.—The court erred in giving to the jury the instruction in the first paragraph of its charge, such charge being inapplicable and erroneous with reference to the only obligation or duty of defendant involved in the case or made an issue by the evidence, to wit, a supposed duty of defendant to anticipate and prevent an injury to plaintiff wholly caused by the negligence of a fellow passenger. Thompson v. Shannon, 9 Texas, 536; Railway v. Kirkbride, 79 Texas, 460; Railway v. Halloren, 53 Texas, 52; Seale v. Railway, 65 Texas, 275; Putnam v. Railway, 55 N. Y., 108; 14 Am. Rep., 190; Felton v. Railway (Iowa), 27 Am. and Eng. Ry. Cases, 229; Batton v. Railway, 77 Ala., 591; 23 Am. and Eng. Ry. Cases, 514; 54 Am. Rep., 80; Mullan v. Railway, 47 Am. and Eng. Ry. Cases, 649.

No brief for appellee reached the Reporter.

STEPHENS, ASSOCIATE JUSTICE.—Appellee, a lady about 62 years of age, though in reasonably good health and reasonably strong, was travelling alone as a passenger on one of appellant's trains, and in disembarking at Denison, Texas, on the 17th day of September, 1892, received the injuries for which she recovered damages.

Her version of the accident, which is the one adopted by the jury, may be gathered from the following portion of her testimony, to wit: "When the train stopped she was afraid to pass out by where these men were, and sat in her seat and waited, thinking the conductor or some of the trainmen would come and assist her off of the train, but they did not, and she waited until she saw the two men who were quarreling go out at the door of the car, and thought they were gone. Witness then got up and started out, picked up her grip and basket, and went as carefully as she could. When she got to the door of the car, she noticed these two men, who had been cursing and quarreling in the car, standing on the platform of the car on the left side of the door. They were still cursing and jowering, and witness was afraid of them and frightened. Witness was excited and did not know what to do; stood on the platform of the car a little bit, and looked for the conductor or porter, or some other trainman, to help her off, expecting that some of them would be there, but none of them were there. Witness then started down the steps herself, and made the first step all right; but just as she went to make the next step these men began to scuffle and move around right behind her, and she felt her dress caught, and at the same time something struck her in the back like some one falling against her, and she fell over against the railing. Witness had her basket in her left hand and her grip in her right. She did not see what struck her, but it seemed like some one fell against her and knocked her off the step, and at the same time her dress caught and she fell against the railing. She tried to rise up and catch, but fell again and struck her hip and back against the step. When she first fell, it broke her collar bone, and she struggled to get on her feet, but was not able to do so, and fell the second time, striking her hip and back on the step, and fell over against the side of the car. As she was getting down onto the box, some gentleman, that she took to be a passenger, caught hold of her right arm to help her, but it hurt her so bad that she told him to let go. She got down some way onto the box that they had there for people to step on when getting off the train, and on down to the ground. Don't know how she did get from the steps to the ground."

On the other hand, the testimony offered by appellant tended to contradict her, and to show that there was no disorderly conduct, especially in that part of the car where appellee was seated, and that the conductor and train porter always assisted passengers off the cars at Denison, but that on the occasion in question they had no recollection of any such occurrence as that detailed by her. She admitted, however, that she never made any request of the conductor or train-

men to render her any assistance, and that she never called their attention to the men who were cursing and quarreling on the car. While the conductor testified, that it was his invariable habit at Denison to stand at the foot of the car steps with the porter and assist the passengers' to alight, he did not make a practice of going on the cars to help passengers off, unless requested; that he could not do this, and at the same time stand at the steps to help them down.

In this state of case, appellant complains that the following charge was erroneous: "It is the duty of railway companies to exercise a high degree of care to enable their passengers to safely alight from their trains. The degree of care required is proportionate to the nature and risk of the business, and is such as would ordinarily be exercised by persons of great care and prudence under similar circumstances. The want of such care is negligence."

It is contended that the following charge should have been given in its stead: "The defendant was under no duty to anticipate negligence of plaintiff's fellow passengers, or provide against liability from injury to her by a fellow passenger stepping on her dress or inadvertently jostling against her while descending the steps."

The following charge is also complained of: "If you find from the evidence that plaintiff was a passenger upon defendant's train, as alleged in her petition, and if, when said train arrived at Denison, and while she was alighting from said train, she fell and received the injuries alleged in her petition, or either of them, and if, from all the evidence before you, you find that such injuries were occasioned by the negligence of the servants and employes of defendant in charge of such train, in failing to exercise the proper degree of care to enable plaintiff to safely alight from said train, and if the plaintiff herself was without fault or negligence contributing to said injuries, then you will find for the plaintiff. But if you find that the servants and employes of the defendant in charge of said train were not guilty of any negligence in failing to exercise proper care to enable plaintiff to safely alight from said train; or if they were guilty of such negligence, yet if that was not the cause of plaintiff's injuries, if she was injured, you will find for the defendant; or if the plaintiff in attempting to alight from said car failed to exercise ordinary care for her own safety, and if her injuries would not have occurred but for such failure, you will find for defendant. By ordinary care is meant such care as a person of ordinary prudence and caution similarly situated as plaintiff was would have exercised under the same circumstances."

The second instruction requested by appellant was clearly upon the weight of the evidence, and need not be quoted.

The principal objections urged in appellant's brief to the charges given, are (1) that they required of appellant too high a degree of diligence with respect to the matters at issue; that is to say, that the care which a common carrier owes to a passenger to protect him from injury by other passengers (unlike that usually exacted of carriers of

passengers) is only ordinary care; and (2) by using the phrase, "the proper degree of care to enable plaintiff to safely alight from said train," appellant was made an insurer of the safety of its passengers.

The first objection raises a question of some difficulty, and upon which the authorities do not seem entirely harmonious; but we think that Chief Justice Stayton, in Dillingham v. Russell, 73 Texas, 52, states the correct rule, citing authorities, in the following language: "It has been steadily held to be the duty of carriers of passengers to protect them, in so far as this can be done by the exercise of a high degree of care, from the violence and insults of other passengers and strangers, and to protect them from the violence and insults of the carrier's own servants; and the inquiry whether this duty arises from contract or from the nature of the employment becomes unimportant, except that the duty goes with the carrier's contract, however made, whereby the relation of carrier and passenger is established."

The testimony of appellee tended to show, that if that degree of care habitually exercised by appellant had been observed in this instance, she would not have been hurt in alighting from the steps of the car. When injured, appellant occupied towards appellee the position of bailee. We think, therefore, the charge was correct in itself, and applicable to the facts of the case.

The second objection places a strained construction upon the language employed. By the use of the words "proper degree of care," the jury could not reasonably have understood that anything more was meant than such as would ordinarily be exercised by persons of great care and prudence, under similar circumstances, as explained in the first paragraph of the carge.

Finding no error in the charge, and that the verdict is not without evidence to support it, we affirm the judgment.

*Affirmed.*

Delivered November 28, 1894.

ON MOTION FOR REHEARING.

STEPHENS, ASSOCIATE JUSTICE.—In the argument filed in support of this motion, counsel for appellant insist that we ignored what they consider the greatest objection to the charge, to wit, "that it was error, as applied to the facts of this case, to give such charge at all, without so qualifying it as to inform the jury that the supposed duty to exercise care could arise only on appellant's discovery of facts threatening danger of this character (negligence and misconduct of other passengers) to appellee, and calling on it for interference;" citing the case of Ellinger v. Railway, 153 Pennsylvania State, 215; 58 American and English Railway Cases; 25 Atlantic Reporter, 1132, as most in point on the facts.

According to the testimony of appellee, a couple of disorderly passengers, who had been riding in the same coach with her, were stand-

ing on the platform of the car, "still cursing and jowering," when she passed out of the coach near them and started down the steps provided for the exit of passengers. That a disorderly conflict between them, either in anger or sport, ensued, resulting in the injuries complained of, is a reasonable, if not the only proper, deduction from her evidence; and that, too, notwithstanding her statement on cross-examination that she did not know who did it.

It thus appears that these disorderly passengers were in conspicuous proximity to appellee as she was about to descend from the car to the platform, and that this obvious situation could not reasonably have escaped the notice of appellant's servant, had he been, according to invariable custom, at the usual place to see passengers safely landed. Can appellant escape the consequence of a knowledge of such situation by the absence of its servant from his post of duty?

We think not. It was as much the duty of appellant, by the exercise of a high degree of care, to safely land as it was to safely carry appellee. It had undertaken for hire to do both. There is nothing to indicate that a high degree of care would have been consistent with the absence of the carrier's servant from the usual place of exit while passengers were disembarking. Even the common hackman who plies his calling between the depot and hotel stands at the door of his coach till the passengers are all out.

To have so qualified the charge, therefore, as to make appellant's duty to exercise care depend upon an actual discovery of threatened danger, would have been misleading when applied to the facts of the case as detailed by appellee. According to appellant's testimony, there was no case to submit.

In the Pennsylvania case cited, the court held that the railroad was not bound to anticipate and provide against the haste and want of civility of a passenger boarding the train, in his effort to reach a seat in the car, whereby another passenger leaving the train was suddenly and unexpectedly jostled and injured—a materially different case, we think, from the one under consideration. Even in that case the principle is recognized, citing Railway v. Pillow, 76 Pennsylvania State, 510, that protection against violence from drunken and disorderly persons upon its trains is the duty of the carrier.

The motion will be overruled.

*Overruled.*

Delivered January 2, 1895.