## HAYS FRIAR v. ORANGE & NORTHWESTERN RAILWAY COMPANY.

Decided March 18, 1907.

**Intoxicated and Armed Passenger—Duty of Carrier.**

It is the duty of those in charge of a passenger train when a passenger is seen to be drunk, boisterous and armed with a deadly weapon which he is flourishing in a manner calculated to disturb the other passengers, to disarm him. Conflicting evidence considered, and held to justify the verdict of the jury for the defendant where a passenger sued a railroad company for personal injuries alleged to have resulted from an assault made upon him by its employes and others in disarming him on a passenger train.

Appeal from the District Court of Jasper County. Tried below before Hon. James I. Perkins.

*P. A. Dowlen* and *A. T. Watts,* for appellant.

*Holland & Holland,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is an appeal by plaintiff from a judgment for defendant upon the verdict of a jury, in a suit by Hays Friar against The Orange & Northwestern Railway Company, in the District Court, to recover damages for personal injuries resulting from an assault alleged to have been made upon him by the employes of defendant and others while plaintiff was a passenger upon one of defendant's trains. In his motion for a new trial plaintiff assigned, as the only ground therefor, that the judgment and verdict were "contrary to, and against, the evidence and the charge of the court in that it appeared that if the plaintiff did assault the brakeman, W. F. Bolin, that the same was but a simple assault made with the fist of plaintiff and that at the time such assault was made the uncontroverted evidence shows that said Bolin was attempting to take a pistol from the wife of plaintiff by force and that by the charge of the court the jury were instructed that under the circumstances shown by the evidence the plaintiff had the right to resort to force to protect his wife from such violence upon the part of Bolin."

The only question which can be considered here is that presented by the third assignment of error based upon the error of the court in overruling the motion for a new trial for the reasons stated. The first assignment of error, however, presents substantially the same question. The fourth assignment raises the question that the verdict is against the great weight and overwhelming preponderance of the evidence and that it is apparent that the jury was actuated in returning the

verdict by prejudice against plaintiff because he was a negro. This not having been urged in the motion for a new trial can not now be considered.

It will be necessary to consider only whether the uncontroverted evidence was such as required a verdict for plaintiff. The evidence for defendant tended to show that plaintiff, who was at the time a passenger on defendant's train, was standing on the platform of the car, drunk, or partly so, and boisterous, brandishing a pistol with which he was armed. Bolin, a brakeman on the train, approached plaintiff and asked him to give him the pistol, saying that he would give it back to him when he got to his destination. Plaintiff's reply was to tell Bolin to "go to hell," coupled with an obscene and insulting remark. Plaintiff then went into a car in which were a number of passengers, among them his wife, and gave the pistol to his wife, who placed it under her on the car seat. Bolin had gone into another car and got a pistol and came back into the car where plaintiff was standing by the seat in which his wife was sitting, and asked plaintiff to give him the pistol. Bolin himself says nothing about asking plaintiff to give him the pistol when he came into the car, but another witness, who was a passenger in the car, testified that he did so, and that plaintiff's wife said that he did not have the pistol. Bolin had seen plaintiff when he gave his wife the pistol and when she put it under her on the seat, and he reached under her to get the pistol when plaintiff struck him a severe blow in the mouth with his fist. Bolin then struck plaintiff over the head with his pistol. In the mixup, in which plaintiff's brother also took part, plaintiff caught Bolin around the body and grabbed his pistol. Another passenger, Crane, the city marshall of Orange, seeing or hearing the melee, came into the car and seeing plaintiff and his brother both engaged with Bolin, plaintiff holding Bolin's pistol and trying to shoot him with it, he, Crane, struck plaintiff's brother with a small steel walking cane, covered with leather, twice. Plaintiff's brother turned Bolin loose and Crane then struck plaintiff once.

According to this witness' testimony, when he got on the car plaintiff and his brother had Bolin down across the back of a seat in the car, the plaintiff holding Bolin's pistol with both hands, with the muzzle against Bolin's belly. About this time the conductor, hearing the row, grabbed a Winchester and started into the car when a passenger took it away from him, rushed into the car and struck plaintiff two or three times with the gun. Plaintiff then broke away, ran out on the platform and stepped or jumped from the train. The train was running, according to Bolin's testimony, twelve or fifteen miles an hour, but several witnesses testify that plaintiff struck the ground on his feet, did not fall, but was seen, as the car moved away, on the track walking in the direction the car was going and apparently unhurt. These witnesses testify that plaintiff was not struck after he turned Bolin loose, and left the car. The conductor made no attempt to stop the train.

The uncontroverted evidence shows that plaintiff was badly injured. He had a wound on his head, one arm was probably broken at the wrist, and the other dislocated.

The plaintiff and his witnesses, of whom there were several, told a different story altogether, according to which there was a brutal and

unprovoked attack upon plaintiff by Bolin, the brakeman, and others, with the conductor looking on and if not participating, at least doing nothing to prevent it.

The jury having credited the testimony of defendant's witnesses, the substance of which has been given above, the question for determination is, did such testimony authorize the verdict?

Plaintiff relies upon the doctrine announced in Dillingham v. Russell (73 Texas, 47), and other cases, that it is the duty of carriers of passengers to protect them, insofar as this can be done by the exercise of a high degree of care, from the violence and insults of other passengers and strangers, and to protect them from the violence and insults of its own servants. This very duty required the carrier and those in charge of the train, when plaintiff was seen to be drunk, boisterous and armed with a deadly weapon which he was flourishing around in a manner unquestionably calculated to disturb and frighten the other passengers, to disarm him before he, in his drunken condition, did more serious damage. If this had not been done and plaintiff had in fact afterwards raised a row and shot or wounded some of the passengers, it is very doubtful whether defendant would not have been responsible for such consequences, which might have been prevented by timely action in at least depriving the passenger of his arms. A drunken man and a loaded pistol in a crowd are a dangerous combination, and defendant's servants in charge of the train and responsible for the safety of the passengers not only from bodily harm, but from any kind of violence or insult, were justified in trying to separate plaintiff from his pistol. Bolin saw plaintiff give the pistol to his wife and saw her place it under her. Reaching under her for it was not an assault upon her, but was a reasonable and proper thing for Bolin to do in the circumstances. It did not justify plaintiff's assault on Bolin. After this, clearly what followed, as shown by defendant's witnesses, in the part taken in the fracas by Bolin and the other person, was justified or excused by the actual or apparent danger of Bolin from the attack upon him by plaintiff and his brother.

It can not be said that the uncontroverted evidence shows that the assault upon plaintiff was unprovoked by him, or that plaintiff was justified in his assault upon Bolin by the act of Bolin in trying to get the pistol, and thus disarm plaintiff.

It is probably proper to say that there is evidence tending to show that just previous to getting on the train plaintiff was intoxicated and creating a disturbance in a crowd and an officer was about to arrest him when Bolin saved him from arrest by telling the officer that he would take him home if he would not arrest him. This is probably material as tending to show that Bolin had reason to be apprehensive that plaintiff would create further disturbance and that it was a proper precaution to disarm him. The judgment is affirmed.

*Affirmed.*