## MISSOURI, K. & T. RY. CO. OF TEXAS v. MORGAN.

(Court of Civil Appeals of Texas. Texarkana. May 25, 1911.)

1. CARRIERS (§ 352*) — TRANSPORTATION OF PASSENGERS — ATTEMPTED EJECTION — MISCONDUCT OF CONDUCTOR—HUMILIATION.

Plaintiff's wife, desiring to go to A., where she resided, and believing that defendant's fast train stopped there to let off interstate passengers, as she was, boarded the train in accordance with the direction of defendant's station agent who sold her a ticket, and, after being directed to change from one car to another en route, was informed by defendant's conductor that the train would not stop at A., and that she would either have to pay her fare to D. or alight at the last stopping place before the train reached A. She declined to do either, whereupon the conductor said to her that, if she lived at A., she knew that the train did not stop there and then, before attempting to eject her, said "Do not disgrace yourself here," and pulled her up out of her seat and called on the auditor to help him eject her, when she paid the fare demanded to the next station. Held, that the statements of the conductor imputed a falsehood to her as well as a charge of disgraceful conduct, and that, if this distressed and humiliated her, plaintiff was entitled to recover damages therefor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1412; Dec. Dig. § 352.*]

2. CARRIERS (§ 365*)—PASSENGERS—EJECTION —FORCE.

Where a carrier's conductor in endeavoring to eject plaintiff's wife from a train on her refusal to alight or pay fare to the next station merely took hold of her arm and pulled her out of the seat, and called to the train auditor to assist him, when she paid her fare to the next station, there was no showing of excessive force authorizing a recovery on that ground.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1450–1452; Dec. Dig. § 365.*]

3. CARRIERS (§ 384*) — TRANSPORTATION OF PASSENGERS — CARE REQUIRED — INSTRUCTIONS.

An instruction that a railroad company transporting passengers was required to use the highest degree of care for their safety, and was bound not to cause mental anguish, humiliation, or shame to a passenger, as well as to care for his physical safety, was not objectionable as misleading and calculated to cause the jury to believe that, though defendant's conductor had a right to eject plaintiff's wife from the train in question, in doing so he must not have caused her to suffer humiliation or shame, even though the act of removing her would necessarily cause humiliation and shame.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1497–1500; Dec. Dig. § 384.*]

4. CARRIERS (§ 382*)—ATTEMPTED EJECTION— HUMILIATION—DAMAGES—EXCESSIVENESS.

Plaintiff's wife boarded defendant's fast train which did not stop at her destination, al-

though she believed and was informed that it would. On the conductor demanding that she alight at the station next before reaching her destination or pay fare to the next stopping place, and her refusal to do either, he attempted to eject her, and in doing so charged that she knew that the train did not stop at her destination if she lived there, and saying, "Do not disgrace yourself here," took hold of her arm, and pulled her out of her seat, when she paid her fare to the next station. *Held* that, since plaintiff was only entitled to recover for mere humiliation and shame suffered by his wife, if any, a verdict allowing him $500 was excessive, and should be reduced to $200.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1490; Dec. Dig. § 382.*]

Appeal from District Court, Denton County; Clem B. Potter, Judge.

Action by J. F. Morgan against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed on condition.

Garnett & Garnett, for appellant. Owsley & Sullivan, for appellee.

WILLSON, C. J. Appellant and the Missouri, Kansas & Texas Railway Company operated over their line of railway from and north of Muscogee, Okl., by Denison to and south of Aubrey, Tex., a fast passenger train known as the "Katy Flyer." This train, as a rule, stopped at only the more important stations for the purpose of taking on or discharging passengers. It stopped for such purposes at Aubrey only in exceptional cases, when the passenger to be taken on was destined to St. Louis, or when the passenger to be discharged was from Kansas City or Oklahoma City, or when a special order from the superintendent directed it to be stopped there for taking on or setting down a passenger. December 11, 1908, appellee's wife and her sister purchased tickets at Muscogee, entitling them to be carried over said line of railway from that point to Aubrey. At the time they purchased the tickets the agent of the companies at Muscogee pointed out the "Flyer," then about to leave on its trip south, as the train for them to take, and they boarded same and traveled thereon to Denison. At this point the train was broken up, as usual, a part of it going on south by Greenville, and another part by Aubrey to Ft. Worth. At Denison appellee's wife and her sister, at the instance, they testified, of an employé of appellant, changed from the car they occupied during the trip from Muscogee to another car he pointed out to them. This car was then carried on south as a part of the "Flyer" towards Aubrey. A short time after the train left Denison, appellee's wife was informed by appellant's train auditor that the train would not be stopped at Aubrey for the purpose of letting her get off same. Later, when the train reached Pilot Point, the first station north of Aubrey, appellant's conductor informed appellee's wife that the train would not be stopped at Aubrey, and that it would be necessary for her either to get off there or pay the fare to Denton, the first station south of Aubrey, where she could take a train which stopped at Aubrey for the purpose of discharging passengers. Appellee's wife refused to either get off at Pilot Point or pay the fare to Denton, until the conductor took hold of her for the purpose of ejecting her from the car. She then paid the fare to Denton for herself and her sister, and was carried on and set down there. Appellee claimed that the appellant's conductor in his effort to induce his wife either to pay the fare to Denton or leave the train at Pilot Point was guilty of conduct entitling him to damages, and recovered a judgment against appellant for the sum of $500.

The contention made under the first, second, sixth, ninth, and tenth assignments, which attack as erroneous the action of the trial court in overruling appellant's motion for a new trial on the ground that the verdict was contrary to the law and the evidence, is that the testimony conclusively established: (1) That appellant had made ample provision by means of other trains than the "Flyer" to transport appellee's wife to Aubrey in compliance with its contract; (2) that under the rules established for the operation of the "Flyer" it did not stop at Aubrey for the purpose of discharging passengers from the territory including Muscogee, where appellee's wife and her sister boarded the train; (3) that appellee's wife knew this when she got upon the train at Muscogee and when it left Denison, going towards Aubrey; (4) that she was repeatedly informed by appellant's auditor and conductor after the train left Denison, and before it reached Pilot Point, that the train would not be stopped at Aubrey for the purpose of permitting her to alight therefrom, and that it would be necessary for her either to leave the train at Pilot Point or there pay the fare to Denton; (5) that she refused at Pilot Point to do either, and by her refusal made it necessary for the conductor in the discharge of his duty to take steps towards ejecting her from the train; (6) that the conductor in taking those steps used no more force than was necessary to enforce the right of appellant to have her either leave the train or pay such fare; and (7) that the testimony failed to show that its employés were guilty of any conduct of which appellee had a right to complain. All these contentions are, we think, sustained by the record, except the third and seventh. [1] Appellee's wife testified that she did not know the "Flyer" did not stop at Aubrey to discharge passengers. On the contrary she testified that she had lived at Aubrey 16 years, was "acquainted with the Flyer and the manner in which it was run," and that it "stopped at Aubrey and let off interstate passengers." She further testified that the train was point-

ed out by the agent at Muscogee who sold the tickets she and her sister were traveling on as the train they should take there, and "at Denison," she said, "we were taken out of the coach we were in and put in one that come to Aubrey." Counsel then asked her to "tell how that change was made." She replied: "Well, the auditor come, and said that wasn't the coach that went to Aubrey, and for us to go with him, and he would put us in the right coach, and told us to sit down and he would unlock the chair car and put us in there, and he did that." She further testified that at Pilot Point the conductor told her she must either leave the train there or pay the fare to Denton; that she refused to do either, but stated to him that she had paid the fair to Aubrey, and, when the train reached that point, she would pay the fare from there to Denton; that the conductor replied that she must pay at Pilot Point or be put off the train, and took hold of her arm and "pulled her up out of her seat, and called on the auditor to help him"; that she then paid the fares demanded, when the conductor desisted from his effort to remove her from the coach. She further testified that the conductor stated to her that she knew the train did not stop at Aubrey when she got on same. The witness McCurdy, appellant's auditor, testified: "When the train stopped at Pilot Point, the conductor went back to the chair car, and told Mrs. Morgan that she would have to get off there if she didn't want to go on to Denton and later take No. 4 back, and she insisted that she wouldn't, and he insisted that she would, and he pleaded that she get off. After he insisted on her getting off and she wouldn't do it, he took hold of her arm and says: 'Lady, don't disgrace yourself here. Either pay your fare and go on to Denton, or get off here. * * *' The train was standing there at Pilot Point when the conductor told her not to disgrace herself. * * * I told her after we left Whitesboro that she knew the train wouldn't stop there (at Aubrey) when she got on. The car seats about 56 people, and I suppose it was about full when I told her that. These people were sitting in the car when I told her that, but I wasn't talking in a loud tone of voice." The witness Wright testified that the conductor talked to Mrs. Morgan "in a pretty rough manner." The witness Smith testified: "The conductor told Mrs. Morgan that she knew when she bought her tickets at Muscogee that the train didn't stop at Aubrey, and she told him that the agent told her that it did; that the agent at Muscogee that sold her the tickets said that was her train and for her to get on. That was the first conversation, and, just before we got to Pilot Point, he came in again and told her she would either have to pay her fare on to Denton or get off at Pilot Point. He was talking rather loud when he told her that." While a passenger on appellant's train appellee's wife was entitled to respectful

treatment on the part of its employés in charge thereof. If she was humiliated because of a failure of said employés or any of them to accord to her such treatment, appellant became liable to respond therefor in damages. 2 Hutch. on Carriers, §§ 1093, 1094; 4 Elliott on Railroads, § 1638; Dillingham v. Railway Co., 73 Tex. 52, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Railway Co. v. Luther, 40 Tex. Civ. App. 517, 90 S. W. 47. She testified that her understanding was that the "Flyer" did stop at Aubrey to let interstate passengers alight, and that she told the conductor so. She and her sister were such passengers. When the conductor asserted, as he admitted he did, that "if she lived at Aubrey she knew that train didn't stop there," whether he intended to do so or not, he in effect imputed a falsehood to her. And when he said to her, "Don't disgrace yourself here," as the auditor testified he did, he in effect asserted that the course she was pursuing, or had indicated she would pursue with reference to the demand he had made of her, was disgraceful. It was not necessary in the discharge of his duty that he should use such language to her. We think the jury had a right to conclude that such language under the circumstances was calculated to and did distress and humiliate her. Railway Co. v. Kuenhle, 16 S. W. 178; Railway Co. v. Tarkington, 66 S. W. 138. The assignments which question the sufficiency of the evidence to show a liability on the part of appellant to appellee therefore are overruled, as is also the seventh assignment, which attacks the third paragraph of the charge as erroneous, because it authorized a finding in favor of appellee if they believed his wife suffered humiliation on account of language used to her by the conductor.

[2] By the fourth and fifth assignments complaint is made of the refusal of the court to give certain special charges. The charges properly were refused because they ignored the issue made by the testimony recited above, which we have determined authorized a finding that appellant was liable in damages to appellee. The charges referred to instructed the jury to find for appellant if they believed the conductor used no more force than was necessary to compel appellee's wife to either pay the fares demanded or leave the train at Pilot Point. Appellee did not have a right to complain that greater force than was necessary was used to induce his wife to pay the fares or leave the train; for it is clear, we think, that the testimony did not show that the force used by the conductor was excessive. But, without respect to the force used by him, appellant was liable if its conductor used language to appellee's wife calculated to, and which did, humiliate her, and which it was not necessary that he should use in the discharge of his duty.

[3] The court told the jury that "a railroad company transporting passengers is required

to use the highest degee of care for their safety," and in another part of his charge told them that this meant "that the carrier owes the passenger such care not to cause mental anguish, humiliation, and shame, as well as for his physical safety." The complaint is that the explanation given as to what was meant by "the highest degree of care" was misleading and calculated to cause the jury to believe that, although the conductor had a right to eject appellee's wife from the train, in doing so he must not have caused her to suffer humiliation or shame, "even though the act of removing her would necessarily cause humiliation and shame." The contention is overruled. We do not think the jury could have been so misled by the instruction, if they gave effect, as we must assume they did, to the language used by the court.

[4] By its third assignment appellant attacks the verdict as excessive. We think it is, and therefore sustain the assignment. On the case as made by the testimony and as submitted by the charge, appellee was entitled to recover only for the humiliation caused his wife by the language used by appellant's conductor and auditor. The judgment will be reversed and the cause will be remanded for a new trial, unless within 10 days from the date of the judgment of this court a remittitur of $300 of the amount of the judgment of the lower court is filed, in which event the latter judgment will be so reformed as to adjudge a recovery in appellee's favor in the sum of $200; and as so reformed it will be affirmed.