[Jordan v. Ala. Great Southern Railroad Co.]

# Jordan *v.* Ala. Great Southern Railroad Co.

## *Action for Malicious Prosecution.*

1. *Action lies against corporation.*—An action on the case for a malicious prosecution may be maintained against a corporation. (The case of *Owsley v. M. & W. P. Railroad Co.*, 37 Ala. 360, on this point, is against the weight of more recent decisions, and is overruled.)

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. LEROY F. BOX.

This action was brought by Jule L. Jordan against the appellee, a domestic corporation, to recover damages for an alleged malicious prosecution; and was commenced on the 10th April, 1882. The complaint contained two counts, each of which averred, in substance, that one William Lively, "who was a section boss on defendant's railroad in said county of St. Clair, and whose duty and business it was, under said employment, to act as agent for said defendant, in looking after its interest and repairing a certain portion of its said road," "while acting in the line and scope of his authority, as such agent, and at the instance of said defendant, and by its authority," caused plaintiff to be arrested and imprisoned, "by appearing before E. J. Robinson, the judge of the County Court of said county, and falsely and maliciously making an affidavit accusing plaintiff of a felony under the laws of Alabama, to-wit, of wantonly or maliciously injuring or obstructing the railroad which defendant was then operating;" that by reason of said false and malicious affidavit, "so made by defendant's said agent, at the instance, and by the authority of said defendant," a warrant of arrest was issued against the plaintiff, and he was arrested and brought before the judge of said County Court, and, after being imprisoned two days and nights, was tried and acquitted; that the defendant, "knowing the charge to be false and unfounded, and that there never was probable cause for said affidavit and warrant, or for believing that plaintiff was guilty of said charge," employed counsel to appear against plaintiff and prosecute him; that the prosecution was ended, &c. The defendant demurred to the entire complaint, and to each count separately, assigning several special causes of demurrer, each of which was, in substance,

[Jordan v. Ala. Great Southern Railroad Co.]

that an action for a malicious prosecution would not lie against a corporation, and that the defendant was not liable for the malicious acts of its agents or servants. "Upon due consideration whereof," as the judgment-entry recites, "it is ordered by the court that said demurrer be sustained; to which the plaintiff objected and excepts. And the plaintiff declining to further prosecute this suit, it is therefore considered by the court, that the defendant go hence, and recover of the plaintiff his costs in this behalf expended," &c. The judgment sustaining the demurrer is now assigned as error.

D. T. CASTLEBERRY, for appellant.—To say that a corporation aggregate can not have motives, and can not act from motives, is to deny the evidence of our senses. Every day's experience shows us that they are acting continually from various motives, making powerful combinations, exercising prudence and foresight in their calculations, and achieving wonderful results. If they can have any motive, it may be bad as well as good; and if they reap the beneficial results of their acts, they should be responsible for the injurious results to others. A corporation necessarily acts through agents, and should be held responsible for the acts of its agents, just as a private person is. The current of modern authorities, both text-writers and judicial decisions, is against the technical rule which formerly prevailed to a limited extent, and holds that an action for a malicious prosecution may be supported against a corporation, under the averments found in this complaint. *Goodspeed v. East Haddam Bank*, 22 Conn. 530; *Vance v. Erie Railroad Co.*, 32 N. J. Law, 334; *Williams v. Pl. Insurance Co.*, 37 Miss. 759, or 34 Amer. Rep. 494; 22 Howard, 202; 9 Phil. Penn. 189; *Carter v. Howe Machine Co.*, 51 Md. 290; Cooley on Torts, 121; 2 Wait's Ac. & Defenses, 337; Field on Damages, §§ 81–86, and authorities cited.

RICE & WILEY, INZER & GREEN, and J. J. GARRETT *contra*, cited *Owsley v. M. & W. P. R. R. Co.*, 37 Ala. 560; *S. & N. Railroad Co. v. Chappell*, 61 Ala. 527; 3 Wait's Ac. & Defenses, 322, § 15. And they contended, also, that an appeal does not lie from a judgment of nonsuit, such as was entered in this case; citing, to this point, *Palmer v. Bice*, 28 Ala. 430; *Vincent v. Rogers*, 30 Ala. 471; *Rogers v. Jones*, 51 Ala. 353; 52 Ala. 285; 1 Tidd's Practice, 460, 481, 3d Amer. ed.

BRICKELL, C. J.—The judgment of the Circuit Court, sustaining the demurrers to the complaint, was doubtless in obedience to the decision in *Owsley v. M. & W. P. R. R. Co.*, 37 Ala. 560, that while an action of trespass for false impris-

onment may be maintained against a corporation aggregate, an action on the case for a malicious prosecution can not be supported. The distinction between the two actions, which embodies the reason of the decision, then supposed to rest on the weight of authority, is thus stated : " The distinction seems to be between acts injurious in their effects, and for which the actor is liable without regard to the motive which prompted them, and conduct the character of which depends upon the motive, and which, apart from such motive, can not be made the ground of legal responsibility." There are not wanting authorities taking the like distinction, affirming that, as a corporation " is an artificial being, invisible, intangible, and existing only in the contemplation of law," to which the law can not impart *animus*, passion, or moral quality ; which is incapable of the commission of an offense, deriving criminality from an evil intent, or consisting in a violation of social duty, it can not be subjected to a civil action of which an essential, distinguishing element is *malice*, or a mischievous purpose or motive. The current of authority now is, that corporations are responsible, civilly, the same as natural persons, for wrongs committed by their officers, servants or agents, while in the course of their employment, or which are authorized, or subsequently ratified.—Ang. & Ames Corp. §§ 385–89 ; Morawetz on Private Corporations, §§ 89–96 ; Cooley on Torts, 119–23 ; *S. & N. R. R. Co. v. Chappell*, 61 Ala. 527.

The immunity from individual liability afforded by corporate organization ; the capacity for the concentration and employment of intelligence, energy and capital, without break or interruption because of changes in membership, has led to the multiplication of corporations, until there is scarcely an object of general concern a corporation is not formed to promote, and to a great extent they have engrossed business in all hazardous enterprises, or enterprises requiring the investment and use of large capital. " With the multiplication of corporations," said Rogers, J., in *Bushel v. Com. Ins. Co.*, 15 Serg. & R. 176, " which has and is taking place to an almost indefinite extent, there has been a corresponding change in the law in relation to them ;" and he adds : " The change in the law has arisen from a change of circumstances—from that silent legislation by the people themselves, which is continually going on in a country such as ours, the more wholesome because it is gradual and wisely adapted to the peculiar situation, wants and habits of our citizens." And in *P., W. & B. R. R. Co. v. Quigley*, 21 How. (U. S.) 210, Mr. Justice Campbell said : " With much wariness, and after close and exact scrutiny into the nature of their constitution, have the judicial tribunals determined the legal relations which are established for the corporation by their

governing body and their agents, with the natural persons with whom they are brought into contact or collision." It is the aim and the duty of courts to apply principles of the common law, with such modifications as are necessary to adapt them to the changed necessities, varied social conditions and diversified business and interests of the community. Perhaps, there is not, in the history of the common law, more distinctive evidence of its modifications, of the rejection of its narrow technicalities, than in the adaptation of the legal relation of corporations to a just liability for the acts, omissions, or engagements of the governing body, or its agents, or servants, employed in the transaction of corporate business. The ancient rule, that they could speak and act only through the common seal, is obsolete; and now they are bound by the like implications and inferences which bind natural persons. The technicality, that an action of trespass would not lie against a corporation aggregate, because the process proper in such action—a *capias* and *exigent*—could not issue, has almost disappeared from the books. Referring again to the case of *P., W. & B. R. R. Co. v. Quigley, supra*, we quote the words of Mr. Justice Campbell: "To enable impersonal beings—mere legal entities, which exist only in contemplation of law—to perform corporal acts, or deal with personal agents, the principle of representation has been adopted as a part of their constitution. The powers of the corporation are placed in the hands of a governing body, selected by the members, who manage its affairs, and who appoint the agents that exercise its faculties for the accomplishment of the object of its being, But these agents may infringe the rights of persons who are connected with the corporation, or who are brought into relations of business or intercourse with it. As a necessary cor-relative to the principle of the exercise of corporate powers and faculties by legal representatives, is the recognition of a corporate responsibility for the acts of those representatives. . . . The result of the cases is, that for acts done by the agents of a corporation, either *in contractu* or *in delicto*, in the course of its business, and of their employment, the corporation is responsible, as an individual is responsible under similar circumstances." This is admitted to be the result of the authorities in *Owsley v. M. W. P. R. R. Co., supra*, subject to the limitation, that as the corporation is incapable of malice, it is not liable for torts of which malice is an essential element.

The idea that a corporation is not liable for a tort involving a malicious intent, had origin in the day when it was denounced as soulless, and was an application of the qaint syllogism ascribed by Lord Coke to Chief Baron Manwood, that "None

can create souls but God; but a corporation is created by the King; therefore a corporation can have no soul,"—from which was deduced the conclusion that it could do no wrong.    There was a reluctance to look beyond legal entity, to the natural persons, its constituent members, or to the agents or servants, through whom its faculties were exercised and its legal existence kept alive.    To the mere legal entity, motive, good or evil, can not be imputed, but is imputable to its representatives; and as the corporation derives benefit from the representation, there is but little of justice in a claim of exemption from the responsibilities it may involve.

We have among us not only purely domestic corporations, but corporations existing by the separate authority of several States, drawn into the daily transaction of business with all classes of the community, holding property of every species under the protection of the law of the State, compelled to a frequent resort to the courts for prevention or redress of injuries.    Foreign corporations, by a liberal comity, here exercise corporate power, transact business, hold and enjoy property. It is by the representation of natural persons that their franchises are exercised, their business transacted, and property acquired. It would not be just, if a natural person suffer wrong from the malicious acts of the representative of a corporation, while within the scope of his employment, for the courts to refuse to look beyond the legal entity, to its real and true character, an association or aggregation of natural persons, capable of acting by a corporate name, and in continuous succession.    This is not unjust to the corporation, for it "tends to induce greater care and caution in the selection of those who are to be intrusted with corporate affairs."    The same reasons that render a corporation responsible for any tort committed by its agents, if we do not resort to the technicality that it is incapable of motive, will render it liable for a malicious prosecution.—*Green v. Omnibus Co.*, 7 Com. Bench, N. S. 290; *Goodspeed v. East Haddam Bank*, 32 Conn. 530; *Carter v. Howe Machine Co.*, 51 Md. 290; *Wheless v. Second Nat. Bank*, 1 Baxter, Tenn. 469; *Jefferson R. R. Co. v. Rogers*, 29 Ind. 7; *Iron Mountain Bank v. Mercantile Bank*, 4 Mo. App. 505; *Vance v. Erie R. R. Co.*, 32 N. J. Law, 334; *Williams v. Planters' Ins. Co.*, 57 Miss. 759; *P., W. & B. R. R. Co. v. Quigley*, 21 How. U. S. 202.    We feel constrained upon this point to depart from the decision first referred to, in *Owsley v. M. & W. P. R. R. Co.*, 37 Ala. 560.    This conclusion is decisive of the case, as now presented; and we purposely abstain from any discussion of the facts and circumstances which must concur to fix upon a corporation liability for tortious acts of its servants or agents.

[Tabor v. Peters.]

The Circuit Court erred in sustaining the demurrers to the complaint, upon the specific ground, that an action on the case for malicious prosecution will not lie against a corporation.

Reversed and remanded.