CHARLES T. PAYTON, Respondent, v. PEOPLES CREDIT CLOTHING COMPANY, Appellant.

Kansas City Court of Appeals, April 19, 1909.

CORPORATIONS: Slander: Management: Scope of Employment: Jury. The general manager of a foreign corporation doing business in this State has the widest scope of duties and is the corporation's *alter ego*; and whether the corporation is liable for his slanderous words spoken in the adjustment of accounts with customers is properly submitted to the jury to determine whether what he did was in line with the policies and practices of the corporation he represents.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) Defendant's demurrer, at close of plaintiff's case, should have been sustained, because it clearly appeared from the evidence that defendant's agent in uttering the words alleged to have been uttered was acting wholly outside of the scope of his employment, and the malice, if any, was his. Milton v. Railroad, 193 Mo. 58; Gas Light Co. v. Lansden, 172 U. S. 534; Singer Mfg. Co. v. Taylor, 43 So. 210. (2) Plaintiff's instruction numbered 1, permits McCoy's malice to be imputed to defendant, and invades the province of the jury by instructing it that plaintiff was damaged. R. S. 1899, sec. 2262; Odgers on Libel and Slander, sec. 368; Fairbanks v. Storage Co., 189 Mass. 419. (3) Instruction numbered 1, asked by defendant, should have been given, because defendant neither authorized nor ratified the words alleged to have been used by its agent, who was discharged two days after the difficulty. Express Co. v. Fitzner, 59 Miss. 581; Redditt v. Singer Mfg. Co., 124 N. C. 100; Hudnell v. Lumber Co., 133 N. C. 169. (4) Plaintiff's instruction numbered 2 is erroneous because there was no testimony that plaintiff suffered humiliation or disgrace, or that his good name or reputation was injured.

*Clif Langsdale* and *John M. Cleary* for respondent.

(1) Defendant's demurrer was properly overruled because it clearly appeared from the evidence that defendant's manager was acting for the corporation and within the scope of his employment when he uttered the slanderous words. Perkins v. Railway, 55 Mo. 214; State ex inf. v. Armour, 173 Mo. 362; Minter v. Bradstreet Co., 174 Mo. 497; Insurance Co. v. Bailey, 101 Va. 443; Murry v. Railroad, 98 N. C. 34; Bank v. Graham, 100 U. S. 699; Railroad v. Harris, 122 U. S. 597; State v. Railway, 23 N. J. Law 369; Empire Cream Sep. Co. v. DeLaval Dairy Supply Co., 67 Atl. 711 (N. J. Sup.

1907).   (2)   McCoy was the corporation in this case, and his malice was, under all of the facts and circumstances as related in the evidence, that of the corporation and plaintiff's instruction numbered 1 was properly given.   Where the words spoken are in themselves actionable, no proof of malice is necessary.   The law will imply it.   Carpenter v. Hamilton, 185 Mo. 603; Minter v. Bradstreet Co., 174 Mo. 497; Bridgman v. Armer, 57 Mo. App. 528; Lewis v. McDonald, 82 Mo. 577; Krupp v. Corley, 95 Mo. App. 640; Baldwin v. Fries, 46 Mo. App. 288.   (3)   To hold a corporation liable in damages for slander it is not necessary to prove that it ratified or authorized the words used.   If it is shown that the slanderous words were uttered by the manager in the performance of his duties the corporation is liable. Same citations as under number one.

JOHNSON, J.—Action against a corporation for slander.   Actual and punitive damages were asked in the petition, but the verdict and judgment recovered by plaintiff were for actual damages only.   Defendant appealed.

Defendant is an Ohio corporation engaged in the business of selling ready made clothing on the instalment plan in various cities of the United States.   One of its stores is in Kansas City.   Plaintiff, a grocery clerk in Kansas City, bought some clothing of defendant on credit and afterwards paid for it in full.   Sometime after the last payment was made, a collector of defendant presented a bill for the clothing to plaintiff and demanded payment.   Plaintiff stated he had paid the bill to another collector and held a receipt in full, whereupon the collector requested him to call at the store and exhibit his receipt to the manager.   Accompanied by a friend, plaintiff went to the store, asked for the manager and was referred to the witness McCoy, who was the manager in charge of defendant's business in Kansas City.   Plaintiff testified: "I told him my name was Pay-

ton and that his collector had been up for the bill which I had paid. He asked if I had a receipt and I told him yes. He said 'Let's see it.' I took the receipt out of my pocket and held it in my hand like this (witness holds up his hand as high as his shoulder). He said 'Give it to me.' I said 'I don't care to give it, but you can see it,' and he stepped up to me and tore the receipt out of my hands. He grabbed it and said 'Give me that receipt. Just because you are a dirty thief and crook you needn't think we are.' I said 'You call me a dirty thief and crook, do you?' and he said 'Yes, I do and I can prove it in more ways than one.' I asked him to give my receipt back and he said 'No' and would not give it back. Went out for an officer but could not find one, so when I returned McCoy was gone and there was a gentleman in the cage there that handed me a duplicate receipt. I took it. There was nothing else to do."

Persons who were present and in position to hear the slanderous words were plaintiff's friend, a woman clerk of defendant, and the manager of defendant's store at Louisville, Ky., who was also a traveling auditor for defendant and was in the office checking up McCoy's accounts. It appears from the evidence of plaintiff that the outburst of McCoy was unprovoked and that plaintiff throughout the affair conducted himself with extreme moderation.

This version of the occurrence is contradicted by the witnesses for defendant who say that plaintiff was abusive from the start and, in effect, charged McCoy with having embezzled the money paid by him on the account. The traveling auditor introduced as a witness by defendant testified that McCoy, provoked by the abuse of plaintiff, did snatch the receipt out of plaintiff's hand and say "because you are a dirty thief, you needn't think we are." On the issues of the scope of McCoy's duties as local manager, a former employee of defendant, called as a witness by plaintiff testified: "He was manager of the business . . . he had full charge and con-

trol of the concern.  I took no orders from anyone except Mr. McCoy  .  .  .  Mr. McCoy had charge of the collections.  He had full charge of everything.  The collectors reported to him and turned over what money they had collected to him."  The witness described the traveling auditor as "a sort of overseer to examine McCoy's books, but he never gave any orders."

Counsel for defendant argue that "defendant's demurrer at the close of plaintiff's case should have been sustained because it clearly appeared from the evidence that defendant's agent in uttering the words alleged to have been uttered was acting wholly  outside the scope of his employment and the malice, if any, was his." [Citing Milton v. Railway, 193 Mo. 46; Gas Light Co. v. Lansden, 172 U. S. 534; Singer Mfg. Co. v. Taylor, 43 So. Rep. 210.]  Reliance is placed by defendant on the remark by way of illustration in Milton v. Railway, supra, that  "the employment of an agent to present a claim and demand payment thereof from the debtor to his principal does not include within its scope the right to arrest or assault the debtor if he refuses to pay. Such an employment contemplates only lawful and peaceable acts and when an agent so clothed with authority commits a trespass upon the debtor, he acts wholly outside the scope of his employment."

We give willing assent to the doctrine thus expressed and were this a case where the slanderous words had been uttered by the collector sent out by McCoy to collect the account, we would say that an action against defendant could not be sustained by mere proof of the facts that the collector was an agent and uttered the slander.  The inference that the wrongful act was authorized by the defendant could not be  drawn  from these facts alone.  But if the plaintiff, in the supposititious case under consideration proved in addition to the facts we have stated that the collector had been directed by McCoy, the manager, to call plaintiff a thief if he did not pay the account, we think no one would have the

hardihood to argue that authority from the corporation to utter the slander could not be inferred from such fact, and that the court should hold as a matter of law the act of the agent to be without the scope of his authority.

That a corporation may be held responsible for a slander uttered by an officer or agent within the scope of his employment is no longer a debatable question. It has been said that to hold the corporation liable, the tortious act of the agent not only must have a direct relation to the performance of some duty pertaining to his employment, but also must have the express or *implied* sanction of the corporation, or afterwards be ratified by the corporation. But where, as in the case in hand, no express authority is shown, the issue of whether authority to commit the wrong should be implied becomes one of fact for the jury where the facts and circumstances in proof would induce a reasonable person to infer that the act was within the general powers conferred on the agent. The rule thus is pertinently stated in Gas Light Co. v. Lansden, supra: "If different inferences might fairly be drawn from the evidence by reasonable men, then the jury should be permitted to choose for themselves. But if only one inference should be drawn from the evidence, and that is a want of authority, then the question is a legal one for the court to decide. We do not mean that in order to render the company liable there must be some evidence of authority, express or implied, given to the manager to publish or to authorize the publishing of a libel, but there must be some evidence from which an authority might be implied on the part of the manager to represent the company as within the general scope of his employment, in regard to the subject-matter of the correspondence between Brown and himself."

McCoy's duties, being those of general manager of the business conducted in this State by a foreign corporation, embraced the widest scope. He *was* the corporation here, its *alter ego,* and was acting within the per-

formance of one of the duties of his position—that of the collection and adjustment of accounts—when he spoke the slanderous words. Clearly, we think, a reasonable man might and would infer that what he did was in line with the policy and practice of the corporation he was employed to represent; in other words, that his act was within the general scope of his employment as manager and was not merely the result of his own malice.

The court committed no error in overruling the demurrer to the evidence. The judgment is affirmed. All concur.