SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. LONG. (No. 5525.)

(Court of Civil Appeals of Texas. Austin. Nov. 24, 1915. On Motion for Rehearing, Jan. 26, 1916.)

1. CORPORATIONS ⊕423—TORTS—SLANDER.

A corporation is liable for a slander uttered by its employé within the scope of his employment, as well as for other torts involving malice.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695, 1903, 1906; Dec. Dig. ⊕423.]

2. COURTS ⊕89 — RULES OF DECISION — AUTHORITIES—TEXT-BOOKS.

Text-books are at best only secondary authority, and their value depends on the care with which their authors examined the cases cited and their ability to draw correct conclusions therefrom.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. ⊕89.]

3. CORPORATIONS ⊕423 — TORTS — ACTS OF EMPLOYÉ—SCOPE OF AUTHORITY.

A slander uttered by the manager of a corporation in giving an employé the reason for her discharge is within the scope of the manager's employment, though he was not authorized to slander her.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695, 1903, 1906; Dec. Dig. ⊕423.]

4. LIBEL AND SLANDER ⊕33—ACTIONS—EVIDENCE.

In an action for slander, proof of special damages is not necessary where the words constitute slander per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 112, 277; Dec. Dig. ⊕33.]

5. LIBEL AND SLANDER ⊕7—WORDS ACTIONABLE—SLANDER PER SE.

Statement by the manager of a telephone company to an employé that the company did not allow girls to work for it who were not ladies; that she and her roommate had had men in their room at night—were slanders per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78; Dec. Dig. ⊕7.]

6. TELEGRAPHS AND TELEPHONES ⊕48 — SLANDER BY MANAGER—SLANDER.

A telephone company is liable for a slander, uttered by its manager in discharging an employé, as a violation of its duty to protect young ladies employed by it from insult and slander by its manager in the conduct of its business.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 30; Dec. Dig. ⊕48.]

**7. LIBEL AND SLANDER ☞80 — ACTIONS — PLEADING.**

In an action against a telephone company for slander by its manager in discharging an employé, where the employé does not sue for damages for her discharge, a special exception to allegations in the petition that she satisfactorily performed all of the duties required of her should be sustained.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 184–186; Dec. Dig. ☞80.]

**8. LIBEL AND SLANDER ☞107—RIGHT OF ACTION—DAMAGES.**

In an action for slander, whether plaintiff was rich or poor was not material to either her right of action or measure of damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 299–303, 305, 351; Dec. Dig. ☞107.]

**9. LIBEL AND SLANDER ☞80 — ACTIONS — PLEADING.**

In an action against a telephone company for slander by its manager in discharging plaintiff, an employé, where no damages are claimed for being compelled to leave the office of the company, an exception to allegations that the plaintiff left the telephone office because she feared that the manager would assault her should be sustained.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 184–186; Dec. Dig. ☞80.]

**10. LIBEL AND SLANDER ☞89 — ACTIONS — PLEADING.**

In an action for slander, the facts as to impairment of plaintiff's health by reason of the slander should be alleged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 213, 214; Dec. Dig. ☞89.]

**11. APPEAL AND ERROR ☞1060 — REVIEW — PREJUDICIAL EFFECT OF ERROR — REMARKS OF COUNSEL.**

Where there was a verdict for $20,000 for slander, the Court of Appeals will not hold that improper and highly inflammatory remarks of counsel for plaintiff do not constitute reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

**12. TELEGRAPHS AND TELEPHONES ☞48 — SLANDER BY MANAGER—SCOPE OF EMPLOYMENT.**

A slander, uttered by the manager of a telephone company in offering employment to another in place of plaintiff, who was discharged, and giving the reason for the discharge, was not within the scope of the manager's employment.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 30; Dec. Dig. ☞48.]

**13. PLEADING ☞369 — MOTIONS — ELECTION BETWEEN CAUSES.**

In an action against a telephone company and its manager for slanders uttered by the manager within the scope of his employment and outside the scope of his employment, the plaintiff should be compelled to elect whether to proceed against both parties jointly for the slander uttered by the manager as agent for the company or for those uttered by the manager in his individual capacity.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1199–1209; Dec. Dig. ☞369.]

**14. LIBEL AND SLANDER ☞28 — ACTIONS — DAMAGES.**

Where words constitute slander per se, the damages are not limited to utterances by the de-

fendant alone, their repetition being the natural and probable result of the original slander.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 104; Dec. Dig. ☞28.]

**15. TORTS ☞15—PROXIMATE CAUSE.**

Every one is responsible for injuries of which his own wrong is the proximate cause.

[Ed. Note.—For other cases, see Torts, Cent. Dig. §§ 19–22; Dec. Dig. ☞15.]

### On Motion for Rehearing.

**16. APPEAL AND ERROR ☞1173—DISPOSITION OF CAUSE—EFFECT AS TO COPARTNERS.**

Under Rev. St. 1911, art. 1997, providing that there shall be but one judgment, on an appeal by one defendant from a judgment against both, a reversal as to the appellant will operate as a reversal of the judgment as to both defendants, notwithstanding the consent of the other defendant to an affirmance as against him, to which the plaintiff refuses to consent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4562–4572, 4656; Dec. Dig. ☞1173.]

Appeal from District Court, Caldwell County; Frank S. Roberts, Judge.

Action by Ila Long, by next friend, against the Southwestern Telegraph & Telephone Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

A. P. Wozencraft and S. P. English, both of Dallas, and Batts & Brooks and Hart & Woodward, all of Austin, for appellant. E. B. Coopwood and J. B. Hatchitt, both of Lockhart, and Fiset, McClendon & Shelley, of Austin, for appellee.

JENKINS, J. This is a suit by Ila Long, suing by her next friend, J. M. Long, against C. M. Dold and the Southwestern Telegraph & Telephone Company, to recover damages by reason of alleged slander, uttered by said Dold. Appellee, a young lady, aged 19 years, was employed by the appellant as a telephone operator in its office at Lockhart, Tex. C. M. Dold was the manager of appellant at said office, with authority to discharge employés, and to prevent improper persons from loitering in the office building of said telegraph company. H. B. Wheatley was appellant's district manager. His district included the Lockhart office. Appellee and Miss Sadie Wilkins, another employé of appellant, were rooming at the residence of Dold, and using his kitchen and dining room for the purpose of light housekeeping. On the morning of September 9th, Dold had a conversation with Miss Wilkins in his dining room in the presence of his wife, in which he used language substantially the same as he subsequently used to both appellee and Miss Wilkins. He came to the door of their room, just across from the dining room, and told them that they were discharged; that the company did not allow girls to work for it who were not ladies; that they had had men in their room at night. He told them that they must leave his house at once, that he would give them 15 minutes in which to

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

leave, and that if they did not do so, he would have the sheriff put them out. Subsequently, on the morning of the same day, appellee, accompanied by Miss Wilkins, went to the telephone office for the purpose of talking to her sister in San Marcos. After finishing the conversation, both of the young ladies were in the rest room of the telephone office, when Dold entered and called them into the hall. He there said to them: "Why haven't you girls left town like I told you?" One of them replied that they didn't have to leave town. Dold said that if he had done what they did he would be ashamed to be seen on the streets of Lockhart, let alone in people's houses. He hold them to get out of there at once; that the telephone company did not allow girls who were not ladies to hang around the office. Miss Wilkins replied that she was as pure a lady as his wife, and more so, after what she had accused them of. Dold said, "If you were a man I would slap you down stairs." Miss Wilkins replied that she was a lady, and that he could knock her down stairs if he wanted to. During this conversation Miss Addie Paige, another employé of appellant, passed slowly by near enough to have heard what was being said. The night before the above occurrences, Dold told Henry Drake, a former employé of appellant, that he was going to discharge appellee and Miss Wilkins and wished to employ him to work in their place, that his reason for discharging them was that he had found that they were of disreputable character, of such character that the telephone company would not allow them to work for it; that they were crooked. The evidence showed that appellee suffered great shame and mortification by reason of the conduct of Dold as above stated, but there was no proof that she had suffered in the estimation of her friends and acquaintances, or had been ·denied employment by reason of said charges. There was a jury trial. No evidence was offered by appellant tending to impeach the character or reputation for chastity of either appellee or Miss Wilkins. The jury returned a verdict in favor of appellee, assessing her damages at $20,000, and judgment was entered accordingly. The telephone company only has appealed.

### Opinion.

[1] Appellant's first assignment of error relates to the refusal of the court to peremptorily instruct the jury to return a verdict for appellant. The substance of appellant's first proposition under this assignment is that a corporation is not liable for a slander uttered by one of its employés, unless it expressly authorized, or subsequently ratified, the same; and, as in this case there is no proof of express authority to utter the slander, and as ratification of the same is neither pleaded nor proven, a peremptory instruction should have been given to return a verdict for the defendant, appellant herein. As to the necessity of showing express· authority, neither reason nor the authorities differentiate corporations from individuals in this respect.

"Private corporations are liable for their torts committed under such circumstances as would attach liability to natural persons." Sawyer v. Railway Co., 142 N. C. 1, 54 S. E. 793, 115 Am. St. Rep. 716, 9 Ann. Cas. 440.

In Hypes v. Railway Co., 82 S. C. 315, 64 S. E. 395, 21 L. R. A. (N. S.) 873, 17 Ann. Cas. 620, the court said:

"It is established that corporations, as well as natural persons, are liable for the willful tort of an agent acting within the general scope of his employment, without previous express authority or subsequent ratification." Rucker v. Smoke, 37 S. C. 377, 16 S. E. 40, 34 Am. St. Rep. 758; Williams v. Tolbert, 76 S. C. 217, 56 S. E. 908; Schumpert v. Railway Co., 65 S. C. 332, 43 S. E. 813, 95 Am. St. Rep. 802; Gardner v. Railway Co., 65 S. C. 342, 43 S. E. 816; Riser v. Railway Co., 67 S. C. 419, 46 S. E. 47; Dagnall v. Railway Co., 69 S. C. 115, 48 S. E. 97; Fields v. Cotton Mills, 77 S. C. 549, 58 S. E. 608, 11 L. R. A. (N. S.) 822, 122 Am. St. Rep. 593.

In W. P. Oil Co. v. Birdwell, 103 Ark. 545, 147 S. W. 64, the court states that there is no evidence in the record of express authority of the agent to commit the slander, but held the defendant liable on the ground of implied authority. In Bushel v. Ins. Co., 15 Serg. & R. (Pa.) 176, Rogers, J., said:

"They [corporations] are bound by like implications and inferences which bind natural persons."

It is but just to the learned counsel for appellant to say that they have not suggested in their able brief herein that a corporation may not be held liable for other torts committed by their agents by implied authority, but their contention is that this legal principle does not apply to slander. If it appears that there is no sound reason for this distinction, then the exception fails, and slander is governed, in this regard, by the general principle above announced. There are decisions which support appellant's contention. These rely principally upon grounds: (1) That as malice is a necessary ingredient of slander, a corporation, having no mind, cannot entertain malice, and therefore cannot be guilty of slander; (2) that slander is usually the voluntary act of the speaker, committed under the immediate influence of sudden passion, and therefore the law ascribes it to the personal malice of the agent, rather than to an act performed in the course of his employment, and in furtherance of the business of the employer.

As to the ground that a corporation has no mind: It is true that for many purposes a corporation is held to be a separate entity from the natural persons who compose it, yet it is, in fact, but the aggregation of such persons, and the mind of such of them as are chosen to manage its affairs is its mind.

"The old doctrine that a corporation, having no mind, cannot be liable for acts of agents involving malice has been completely exploded in

modern jurisprudence." Hypes v. Railway Co., supra.

"It is well settled * * * that a corporation may, to the same extent as a natural principal, be held liable for the malicious wrongs of its officers or agents, if committed in the course of a transaction which is within the scope of their authority." Sawyer v. Railway Co., supra.

No one who has the slightest knowledge of law would assert that a corporation could not be guilty of libel, and libel necessarily involves malice. Nor would it be denied that a corporation may be guilty of malicious prosecution or false imprisonment.

The admission implied in appellant's proposition that a corporation may be held liable for slander where it expressly authorizes the same is itself an answer to the doctrine that a corporation cannot be held liable for malice; for a corporation, being an incorporeal entity, must necessarily act through agents where it expressly authorizes such action. In such case it is held to be immaterial that the authorized act was ultra vires, as not being in the scope of its corporate powers. Hussey v. Norfolk S. R. Co., 98 N. C. 34, 3 S. E. 923, 2 Am. St. Rep. 312. The doctrine of ultra vires, in so far as it relates to private corporations, is applicable only to matters ex contractu. A tort is necessarily ultra vires because no corporation is authorized by its charter to commit a wrong.

As to the second proposition that slander is the voluntary act of the speaker, committed under immediate influence of sudden passion, the same may be said, in some instances, of libel. A slander may be, and in some instances undoubtedly is, uttered with deliberate and preconceived malice, while the publication of a libel may be, and in some instances undoubtedly is, made under the influence of sudden passion. If this distinction should be recognized it would not be true, as a matter of law, that a corporation could not be held liable for the utterance of a slander, but its liability would depend upon the degree of malice which actuated the agent in uttering the defamatory words. If defamatory words are falsely uttered with malice, it is slander, regardless of whether the same be done with express or implied malice, and the same is true of libel. It has never been held that a corporation was not liable for a libel if published without deliberation and under the influence of sudden passion. In both libel and slander, express malice may be a material consideration in assessing the damages, but it is immaterial as to fixing liability. Another reason which has been suggested for holding the principal liable in libel, but not in slander, is the greater publicity given to the printed matter. This may or may not be true in a given case. A libel may consist in a written statement in a letter seen by only one person, while a slander may be uttered in the presence and hearing of a thousand or more people. Here again, as in the case of express or implied malice, the degree of publicity might be taken into consideration in assessing the amount of damage, but not in fixing liability. The damage would be greater to a man of state-wide business or social relations if a libel concerning him was published in a paper of 100,000 circulation than if published in a paper of very limited circulation and confined to a given locality; but the one would be as much a libel as the other. In slander and in libel, neither the extent of the publication nor the degree of malice is a determinative factor. In Rivers v. Railway Co., 90 Miss. 196, 43 South. 471, 9 L. R. A. (N. S.) 931, the court said:

"Lord Mansfield very accurately said, in Maloney v. Bartlett, 3 Campb. 210, that 'there seemed * * * to be no well-founded distinction between written and unwritten slander,' and that 'the reasons given in the books for such a distinction are very insufficient.'"

The reasons thus referred to by Lord Mansfield are the comparative publicity and the comparative malice in libel and in slander. In Hypes v. Railway Co., supra, the court said:

"The liability of a corporation for malicious libel, published by its agent in the course of his employment, is generally recognized. Phila. W. & B. R. Co. v. Quigley, 21 How. 202, 16 L. Ed. 73; Johnson v. Dispatch Co., 65 Mo. 539, 27 Am. Rep. 293; Bacon v. Michigan C. R. Co., 55 Mich. 224, 21 N. W. 324, 54 Am. Rep. 372; Maynard v. Fireman's Fund Ins. Co., 34 Cal. 48, 91 Am. Dec. 672; Fogg v. Boston & L. R. Corp., 148 Mass. 513, 20 N. E. 109, 12 Am. St. Rep. 583; M. & P. R. Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; 10 Cyc. Law & Proc. p. 1215; 18 A. & E. Ency. Law, p. 1058. We do not regard the distinction between written and unwritten slander to be of sufficient importance to warrant the application of a different rule."

In Payton v. Credit Co., 136 Mo. App. 577, 118 S. W. 531, the court said:

"That a corporation may be held responsible for a slander uttered by an officer or agent within the scope of his employment is no longer a debatable question."

The cases principally relied upon by appellant to sustain its contention now under discussion are Behre v. Register Co., 100 Ga. 213, 27 S. E. 986, 62 Am. St. Rep. 320; Distributing Co. v. Greenbaum Bros., 135 Ky. 182, 121 S. W. 1026, 24 L. R. A. (N. S.) 955, 21 Ann. Cas. 481; Mfg. Co. v. Taylor, 150 Ala. 574, 43 South. 210, 9 L. R. A. (N. S.) 929, 124 Am. St. Rep. 90; Eichner v. Bank, 24 App. Div. 63, 48 N. Y. Supp. 978; Comerford v. Railway Co., 164 Mass. 13, 41 N. E. 59; Kane v. Ins. Co., 200 Mass. 265, 86 N. E. 302; Flaherty v. Maxwell Motor Co. (Mich.) 153 N. W. 45.

The Behre Case, supra, rests upon the exploded doctrine that a corporation has no mind, and therefore "has not the capacity to commit that wrong" (slander). The case of Distributing Co. v. Greenbaum, supra, was before the court on appeal from a judgment sustaining a demurrer to plaintiff's petition, the allegations of which showed that Greenbaum's agent, when he uttered the slanderous words, was not acting as the agent of

his employer, and that the words uttered had no connection with his employer's business. The court held, and very properly so, that the petition showed no cause of action. There was no occasion to discuss what would have been the law if the slanderous words had been uttered by the agent in the course of his employment. The language of the decision in this regard seems to have been used without mature consideration. In justification of this criticism we call attention to the fact that the court first discusses at some length that slander is an individual act, and cannot be a joint act, which was not involved in the case. It then announces the correct doctrine that a corporation may be held liable for a libel published by its agent. We quote from the decision as follows:

"That a corporation or partnership may be sued in libel for actionable words written and published by its agents is well settled, not only by the decisions of this court, but by the authorities generally."

In support of this statement it cites a long list of authorities. It then adds:

"It is true that these authorities relate to libel, but upon principle there can be no reason why the corporation or copartnership may not also be sued for the slanderous utterances of its agent. Libel is no more a tort than slander, the *only* difference (italics ours) between them being that in libel the words are written, while in slander they are spoken."

The court then proceeds to draw a distinction which we have, in a preceding part of this opinion, attempted to show does not exist, and in support of which the opinion cites not a single authority. The decision in Mfg. Co. v. Taylor, supra, quotes with approval an excerpt from Jordan v. Railway Co., 74 Ala. 85, 49 Am. Rep. 800, that:

"The current of authority now is that corporations are responsible civilly, the same as natural persons, for wrongs committed by their officers, servants, or agents while in the course of their employment."

That is to say, upon implied as well as direct authority, but it makes an exception as to slander, upon the ground that "slander is the voluntary tortious act of the speaker, and is more likely to be the expression of momentary passion of excitement of the agent," which, as we have said, is not sound, and is against the weight of authority. The court cites in support of its opinion Cooley on Torts, 124. The citation is not apropos inasmuch as it is only to the effect that there can be no joint utterance in slander, but that:

"If two or more utter the same slander at the same time, still the utterance of each is individual and must be the subject of a separate proceeding for redress."

In such case the doctrine of agency is not involved. But the court in the case which it was discussing recognized that there could be a joint proceeding in slander against a corporation and its agent, where the agent uttered the slander by the express authority of the corporation, or where the corporation ratified the slander. On this all authorities are agreed. The court also cites 10 Cyc. 1216. The only authority cited to sustain the text of this usually reliable work is Redditt v. Mfg. Co., 124 N. C. 100, 32 S. E. 392. That case not only does not support the text, but is authority against it. The doctrine there announced and concurred in by all members of the court is:

"That a corporation, contrary to the early cases, is now liable to civil and criminal actions under the same conditions and circumstances as natural persons are * * * if they act under the express or implied authority."

We quote further from the Redditt Case as follows:

"The principle which we approve is well stated in State v. Railroad, 23 N. J. Law, 360: 'If a corporation has itself no hands with which to strike, it may employ the hands of others; and it is now perfectly well settled, contrary to the ancient authorities, that a corporation is liable civiliter for *all* torts (italics ours) committed by its servants or agents by authority of the corporation, express or implied.'"

The Redditt Case was a suit for slander. No distinction between slander and other torts was attempted to be drawn. The case was reversed, as shown by the concurring opinion of the majority of the judges, upon the ground that the evidence was not sufficient to show implied authority on the part of the agents to utter the slanderous words. Neither Comerford v. Railway Co., supra, nor Kane v. Insurance Co., supra, is in point. The former case went off on the point that the allegata and probata did not agree, and the latter case upon the point that:

"There was no offer to prove that what was said by either of the solicitors was said in the course of his employment, or while acting in the apparent scope thereof."

[2] In Eichner v. Bank, supra, the court cites no authority, except Townshend on Slander and Libel and Odgers on Slander and Libel. The citation from Townshend is section 265, wherein it is said that a corporation cannot be guilty of slander because there can be "no agency in slander," which the Supreme Court of Mississippi, in Rivers v. Railway Co., supra, justly characterizes a ridiculous expression, and because a corporation has not the "capacity" to commit slander, which, if not quite so ridiculous, is as thoroughly exploded. Townshend cites no authority except Maloney v. Bentley, 3 Comp. 210, which does not tend to support his text. That case was a suit against an individual for a libel, and neither slander nor the responsibility of a corporation was involved. Text-books are, at best, only secondary authority, and their value depends upon the care with which their authors examine the cases cited and their ability to draw correct conclusions therefrom. Odgers' statement that a corporation cannot be held liable for slander, because "slander is the voluntary act of the speaker," rests upon his own ipse dixit. He cites no authority to sustain his text, and none is cited in the notes to the American edition. The case of Flaherty v.

Motor Car Co., supra, rests upon the doctrine announced in the Behre Case, supra, that a corporation has no mind, and repeats the inconsistency, found in all cases affirming this doctrine, that a corporation has sufficient mind to be guilty of slander through the medium of an agent, if it directly authorizes or subsequently ratifies such slander.

[3] The appellant insists that the words uttered by Dold were not within the scope of his authority, for though the appellant had authorized him to discharge appellee, it did not authorize him to slander her. This is but a concrete statement of the doctrine hereinbefore discussed that in slander a corporation cannot be held liable for implied malice, and that in the absence of direct authority to utter the slander, which would be proof of express malice, the slander is to be attributed solely to the malice of the agent who utters it. It is true that the appellant corporation did not expressly authorize Dold to slander appellee, and had no desire that he should do so, but it did authorize him to discharge appellee, and to protect its office from the intrusion of improper persons, and it is responsible for the wrongful manner in which he discharged this duty. A distinction must be drawn between doing a thing merely contemporaneously with something done within the scope of the agent's authority and something wrongfully done as a part of the act within the scope of such authority. There is an old and apt illustration where the driver of a cart negligently or maliciously drove the same against the horse of another, and where, while driving the cart, in order to wreak his own vengeance, he maliciously struck the horse of another in passing him. In the first instance he was doing what his employer had authorized him to do, viz., drive the cart, and his employer is responsible for the manner in which he does so, regardless of the fact that he may have been actuated by his personal malice in driving the cart as he did. In the other case, though he happened to be driving the master's cart at the time he struck the horse, he did not strike it in the execution, or in the attempted execution, of that business, and striking the horse had no more real connection with his business of driving the cart than if he had not been in the master's employment at the time. In the instant case Dold was authorized to discharge appellee, and his employer, who clothed him with that authority, is responsible for the manner in which he executed his commission. Levi v. Brooks, 121 Mass. 501; Geraty v. Stern, 30 Hun (N. Y.) 426; Dillingham v. Russell, 73 Tex. 51, 52, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Railway Co. v. Bender, 57 S. W. 574.

[4, 5] As to appellant's fourth proposition that the peremptory instruction should have been given because no special damages were proven, such proof is not necessary where the words uttered constitute slander per se, as they did in the instant case. Forke v. Homann, 14 Tex. Civ. App. 670, 39 S. W. 210; Cranfill v. Hayden, 22 Tex. Civ. App. 656, 55 S. W. 812; Clark v. Bohms, 37 S. W. 349; Printing Co. v. Moulden, 15 Tex. Civ. App. 574, 41 S. W. 387; Bailey v. Chapman, 15 Tex. Civ. App. 240, 38 S. W. 545.

For the reasons stated, appellant's first assignment of error is overruled.

[6] We also overrule said assignment for the further reason that appellant is liable to appellee for the slander uttered by its superintendent, by reason of the contractual relation existing between appellant and appellee. That such liability exists on the part of railroads is recognized in Mfg. Co. v. Taylor, supra, and this is undoubtedly the law. Traction Co. v. Lambkin, 99 S. W. 574; Railway Co. v. Martino, 2 Tex. Civ. App. 634, 18 S. W. 1066, 21 S. W. 781; Railway Co. v. Laprelle, 27 Tex. Civ. App. 496, 65 S. W. 488; Railway Co. v. Tarkington, 27 Tex. Civ. App. 353, 66 S. W. 137. See, also, authorities cited in note to Davis v. Houghtelin, 14 L. R. A. 738. We do not see why the telephone company was not under as much obligation to the young ladies employed by it to protect them from insults and slander by its manager in the conduct of its business as is a railway company to protect its passengers from insults or slander by its conductor. It is true that a railway company is required to exercise the highest degree of care to prevent injury to its passengers. But in cases of willful assault or malicious insult by a conductor, the question of the degree of care is not involved. This principle of law is applicable only when upon a given state of facts the issue is whether or not the railroad company was guilty of negligence.

[7] Appellant's second assignment relates to the action of the court in overruling its special exception to that portion of appellee's petition which alleges that she satisfactorily performed all of the duties required of her. We sustain this assignment for the reason that appellee did not sue for damages on account of her discharge.

[8] We sustain the third assignment of error. Whether appellee was rich or poor was not material to either her right of action or measure of damages; hence the special exception should have been sustained.

[9] We sustain the fourth assignment of error. The allegation that appellee left the telephone office because she feared that Dold would assault her was immaterial. She does not claim any damage by reason of being compelled to leave the office. Such allegations could serve no legitimate purpose, and were calculated to prejudice the jury against appellant.

[10] We sustain the ninth and nineteenth assignments of error only so far as they relate to the prior impairment of appellee's health by reason of the slander. The facts as to this should have been alleged.

[11] We sustain the twelfth, thirteenth,

fourteenth, and seventeenth assignments of error in reference to remarks of appellee's counsel to the jury. The statements complained of were improper and highly inflammatory, and, in view of the fact that the verdict was large, if not excessive, we cannot say that they do not constitute reversible error. As this case is to be reversed on other grounds, we do not deem it necessary to pass on the eighteenth assignment, which is that the verdict is excessive.

[12, 13] We sustain the twenty-first and twenty-second assignments of error with reference to the testimony of Henry Drake, for the reason that the statements of Dold to Drake were not made within the scope of his employment, and, while said statements were slanderous per se, and constituted a good cause of action against Dold, such cause of action against Dold individually was improperly joined in a suit against Dold and appellant jointly. The appellee should have been compelled to elect whether she would proceed against appellant and Dold jointly for the slanders uttered by Dold as agent for appellant, or for those uttered by Dold in his individual capacity. Appellant specially excepted to appellee's petition on account of such misjoinder of parties and causes of action. This exception should have been sustained, for which reason we sustain the thirtieth assignment of error.

The thirty-first assignment is as to the court's permitting this action to be maintained by J. M. Long as the next friend of Ila Long. The issue raised by this assignment can, and doubtless will, be obviated upon another trial by appellee's alleging and proving, if such is the fact, that she has no legal guardian. The error, if any, complained of in the thirty-second assignment of error will doubtless be cured by an amended petition upon another trial hereof.

[14] Appellant's tenth assignment of error is as to the refusal of the court to give the following special charge:

"In considering the amount of damages, if any, to be allowed, you are instructed that you can only consider the actual damage, if any, which you believe from the evidence plaintiff, Ila Long, has sustained, or will sustain, by reason of the alleged utterances, if any, having been heard by those persons, if any, who had heard the same *directly from C. M. Dold*" (italics ours).

The same issue is presented by the eleventh assignment. Appellant cites in support of its proposition King v. Sassaman, 54 S. W. 304; Shurtleff v. Parker, 130 Mass. 293, 39 Am. Rep. 454; Stevens v. Hartwell, 11 Metc. (Mass.) 542; Pettibone v. Simpson, 66 Barb. (N. Y.) 492; Gough v. Goldsmith, 44 Wis. 262, 28 Am. Rep. 579; Terwilliger v. Wands, 17 N. Y. 54, 72 Am. Dec. 420; Prime v. Eastwood, 45 Iowa, 640; Rutherford v. Evans, 4 Car & Payne, 74, 19 E. C. C. 414; Ward v. Weeks, 7 Bing. 211, Reprint Eng. R. 81, 20 Com. Law R. 101; Odgers on Libel and Slander, 177; Newell on Libel & Slander, 431.

There is no disagreement as to the doctrine announced in the text-books cited by appellant as to the individual character of slander, nor from the statements of the authors that if A. utters slanderous words concerning the servant of B., and C. repeats the words to B., by reason of which the servant is discharged, the unauthorized repetition by C. is not a slander uttered by A., and that special damage is not recoverable by the servant against A. This, it seems, upon the ground that, as special damage must be specifically alleged, and is not to be inferred but must be proven, where an independent will has intervened between the act of A., and that which caused the damage, viz., the repetition of the slander, the original utterance by A. is not the proximate cause of the injury.

[15] It is a sound proposition of law that every one is responsible for the injuries of which his own wrong is the proximate cause. When an act is a cause of an injury, and without which such injury would not have occurred, and such injury is the usual and natural consequence of the act and ought reasonably to have been foreseen, such act is the proximate cause of the injury. Generally, when special damages are claimed, where an independent act of a third person intervenes, and directly causes the injury, the act of the original wrongdoer is not the proximate cause of the injury. This upon the ground that one is not usually expected to foresee that his wrongful act, which would not itself have inflicted the injury, will be so acted upon by another wrongdoer, for whose act he is not directly responsible, as to cause the injury. But this is not always the case. If he ought reasonably to have foreseen that his wrongful act would be acted upon by a third party so as to inflict the injury, he is responsible, notwithstanding such intervening act of a third party. .

"The act of a third person intervening and contributing a condition necessary to the injurious effect of the original negligence will not excuse the first wrongdoer if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not on the number of subsequent events and agencies which might arise." Railway Co. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642, citing Lane v. Atlantic Works, 111 Mass. 139; Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; Jones v. George, 61 Tex. 346; Railway v. McKinsey, 78 Tex. 298, 14 S. W. 645, 22 Am. St. Rep. 54; Weick v. Lander, 75 Ill. 93.

This reasoning applies with more force where the original tort is not the negligent omission of duty, but is an affirmative wrong. In Gonzales v. Galveston, supra, page 7 of 84 Tex., page 285 of 19 S. W. [31 Am. St. Rep. 17], the court defined proximate cause as—

"such as might reasonably have been contemplated as involving the result under the attending circumstances."

This doctrine is illustrated by the old case mentioned in the books where a person threw a lighted squib into a crowd, and the persons therein, for their own protection, threw it from hand to hand until finally a party was injured thereby who would not have been injured but for acts of intervening parties. The original wrongdoer was held liable for the injury. It is true in that case that the acts of the intervening parties were not wrongful. It is also true that ordinarily it will not be presumed that a party reasonably anticipated that another would do a wrongful act because he had done so. But if the circumstances are such as to show that he ought reasonably to have anticipated such intervening act as a consequence of his own wrong, it can make no difference in principle whether such intervening act is rightful or wrongful, nor in such case that the party or parties guilty of the intervening wrongful acts are also responsible for the consequences of their own acts. This does not relieve the original wrongdoer from "the probable injurious consequences which were to be anticipated from his own wrongful act."

In slander per se, proof of actual damages is not required. Why? Because the law not only reasonably anticipates, but conclusively presumes, damages in such case. What damages? Principally to reputation, by reason of which the person slandered suffers mental anguish from shame and mortification and the loss of the society of good people. It would be no defense to prove in such case that the slander was uttered in the presence of only two or three persons, who did not believe it, and had so informed the plaintiff, and that in fact neither of them had repeated the slander. The slandered person, knowing human nature, as every person is presumed to know, would nevertheless suffer mental anguish in anticipation that such slander would probably be repeated and become current in the future. It is the anticipation of such fact which causes the major portion of the mental suffering in such case. Ought a party who utters words so derogatory as to constitute slander per se be held to have reasonably anticipated that they would be repeated? We think so. We think that the fact that the law conclusively presumes damages from the utterance of a slander per se, even though in the presence of but one person, who did not believe it, shows that the slanderer must be held to have reasonably anticipated its repetition, from which, as experience shows, may arise the only injury suffered. Any person with sufficient intelligence to be guilty of slander ought, in the light of common experience, to anticipate the repetition of such slander, and the injurious consequence thereof. He who utters a slander, especially against the reputation of a woman for chastity, must know that he is opening a veritable Pandora's box. He must realize that he is turning loose, as it were, the down of thistle, and ought not to be heard to say that he is not responsible for the wind's scattering it abroad. The "breath" of scandal blows almost as universally as does the wind. Of a scandal, even when uttered to only a few persons, it may well be said:

"Behold how great a matter a little fire kindleth" (James 3:6) ; and, "He that kindleth a fire shall surely make restitution" (Exodus, 22:6).

We cannot tell from the opinion in King v. Sassaman, supra, to what extent the matter of repetition was considered by the court. If, however, the court referred to reports originated by the defendant, it is sufficient to say that in that case the plaintiff was suing for "vindictive," as well as actual, damage, and what appears to have been a passing remark of the court was correct as applied to exemplary damages.

The texts in both Odgers and Newell, supra, have reference to defamatory words which are not actionable per se, and where special damages are alleged. In such case the authorities cited by appellant sustain the proposition that the original utterer of a slander is not responsible for the damage ensuing from its repetition. Newell, referring to this proposition, says:

"But this apparent hardship only arises where the words are not actionable without proof of special damage. When the words are actionable in themselves, the jury may find damages generally, and will judge from the circumstances what the amount will be." Newell on Slander and Libel, 432.

Odgers (1st Am. Ed. 318) says that special damages must be pecuniary, and do not include—

"mental distress, illness, expulsion from a religious society, etc. But where the words are actionable per se, the jury may take such matters into their consideration in according damages."

In each of the American cases cited by appellant, supra, except Prime v. Eastwood, the court explicitly states the words were not actionable per se, and that only such special damages as were proven could be recovered. It would seem that the words spoken in Prime v. Eastwood were actionable per se, but the court did not refer to this fact; on the contrary it treated the case wholly as an action for special damage, citing Terwilliger v. Wand, supra, in reference to "defamatory words not actionable in themselves." Besides there was no offer to prove that the slander per se uttered by defendant had been repeated, but only that:

"There was a rumor in the neighborhood in reference to plaintiff, and that plaintiff had claimed that defendant had some of his hogs."

It appears that both parties were claiming the same hogs. The court held that this testimony was not admissible.

We have not thought it necessary to examine the English authorities cited by appellant supra, but we infer from their citation in text-books that they do not relate to actions for slander per se. If it is otherwise, we would not consider as very persua-

sive in this matter the decision of courts in a country where it is held not to be slander per se to call a virtuous woman a "whore" or a "prostitute." Referring to this Lord Campbell said:

"I may lament the unsatisfactory state of our law according to which the imputation of words, however gross, on an occasion however public, upon the chastity of a modest matron or a pure virgin, is not actionable without proof that it has actually produced special temporal damages to her." Lynch v. Knight, 9 H. L. C. 593.

Lord Brougham added:

"Instead of the word 'unsatisfactory' I should substitute the word 'barbarous.'" Id. 594.

We overrule the other assignments of error. The length of this opinion, rendered unavoidable by the importance of the questions discussed herein, preclude our giving our reasons for so doing, though some of them present interesting questions of law.

For the reasons stated, the judgment of the lower court is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

### On Motion for Rehearing.

[16] Appellant insists that, inasmuch as its codefendant, Dold, did not appeal, and as he has filed in this court his written consent that the judgment of the lower court herein be affirmed as to him, such judgment should be affirmed as to him and reversed and remanded as to appellant. Against this appellee enters her vigorous protest. Thus is presented the remarkable spectacle of a defendant, against whom a judgment for $20,000 has been rendered, asking that the same be affirmed, and the plaintiff therein protesting against such affirmance. When it is remembered that the appellant is a foreign corporation, and, if prosecuted alone, might secure a removal of this cause to the federal court, the reason for the anomalous position of the parties hereto may be surmised; but with that, further than it affects their legal rights, this court is not concerned.

We have held in our original opinion herein that, as to two of the alleged slanders, the defendants were joint tort-feasors. Such being the case, the appellee had the legal right to sue them jointly, and we do not think that any one can deprive her of that privilege without her consent, at any stage of the proceeding. It is true that, as she might have brought her suit against either of them separately, she may dismiss as to either of them, or, having obtained a joint judgment against them, Dold not having appealed, with his consent, which might be inferred from his failure to appeal, and with the consent of the appellant company, she might have an affirmance against Dold and continue her case against the company, upon the ground that both Dold and the company would be estopped to subsequently object to such proceeding. Whether this would be true or not we are not called upon to decide, for the reason that the appellee is not consenting to such action.

The statute provides that there shall be but one final judgment (article 1997, R. S.); and, inasmuch as the plaintiff has not abandoned her cause of action against the defendants jointly, but is insisting upon the same, we hold that a reversal as to one of such defendants operates as a reversal as to both of them. Danner v. Walker-Smith Co., 154 S. W. 301, 302; Railway Co. v. Smith, 99 S. W. 171; Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548.

Motion overruled.