Jones, J.
There is no claim that any express authority was conferred on Adams to utter a slander in connection with his agency at Lorain, nor was there any evidence of a ratification by the corporation of the agent’s action. The only question presented is whether, in the absence of express authority or ratification, the defendant could be held liable under an implied authority conferred by reason of the general scope of employment under which Adams was then acting in the furtherance of the corporate business. .Stated broadly, it may be that there is m> “agency to slander” arising from the mere fact of an agent’s employment; but, under the current of modern authority, if a corporate servant, who has been fully delegated with plenary authority to act upon a matter in his master’s stead and to whom has been committed a full discretion as to the manner of its performance, utters a slander while engaged in the furtherance of the master’s business, so delegated, the master may be held liable.
The rule of responsibility, involving the liability of corporations under the maxim respondeat superior, is stated in Little Miami Rd. Co. v. Wet *47 more, 19 Ohio St., 110. This rule is generally adhered to, and, as stated by the judge in the open-' ing of his opinion, the difficulty is not in the operation of the rule itself but in the application of the rule to the facts in each particular case. It should be borne in mind that the character and scope of the duties entrusted to the agent, and the legal relation subsisting between the principal and the slandered person, are controlling considerations in the enforcement of liability for slander under an implied authority. Thus it is far more difficult to establish a liability for slander against an individual, by invoking the legal maxim qui facit per alium facit per se and the rule of implied authority, than against a corporation, which must necessarily act through some personal agency. An individual may reserve to himself the means, method and personal discretion in the manner of executing the subject-matter; but a corporation, compelled to act through some managerial or subordinate agency, necessarily must empower some one of its selected agencies with a scope of employment that comprehends not only the performance of an act but the discretion and method of its performance. A corporation, in many instances, is compelled to se- . lect a personal agency who acts as its alter ego, and when that character of an agency appears of course the act of that agent, while exercised in the furtherance of his principal’s business, is the act of the principal itself. Likewise the relative duties subsisting between the corporation and the person slandered may be a determinative factor in establishing whether the tortious act was authorized by *48 implication. In the application of this principle to carriers of passengers, the acts of subordinate agents, such as conductors and brakemen, are held to be the acts of the carrier, for to such agents are committed the care and custody of the passengers, and a tortious act, whether assault or slander, committed by such an agent in the prosecution of the master’s business, binds the principal. In such cases, and in some instances in cases of hotels, steamboats and theaters, the liability is imposed because of a contractual duty of care and protection arising between the patron and carrier or proprietor, under which the latter is required to protect the former from assault upon his person or character. The patron, in such case, has not only the right to be safe but to feel safe. But, manifestly, the same liability would not attach if a slander were uttered by a mere foreman of right of way or by some subordinate agent of a private corporation, where it cannot be reasonably implied that the character of his duties might eventuate tortious conduct in course of performance. The difficulty underlying the application of the legal principle involved, and the test of corporate liability, are fully stated by Mechem in his treatise on Agency, quoted by Judge Spear in The Stranahan Brothers Catering Co. v. Coit, 55 Ohio St., 410.
In the instant case it appears from the record that while the general offices of the plaintiff in error were in Columbus, Adams himself was the local manager and had full and complete authority over the operations of the company in the city of Lorain. The discovery that electricity was appropriated *49 without metering was reported by the inspector to Adams as local manager. He himself testified that these matters, including the adjustment and settlement of cases of this character, came within the range of his duties; and it was during the adjustment of the question involved, and while in the furtherance of that object, that the defamatory words were spoken. Adams, therefore, had not only the fullest power to deal with the question at issue between Black and the company, viz., the matter of leakage of electricity, but had full authority to adjust that question in any manner that he chose. He was in fact, upon that occasion, the alter ego of the company. And if in his effort to obtain an adjustment he used the defamatory words alleged, he did so not only in furtherance of the company’s business but under an authority fairly implied from the duties entrusted to him; and the act was within the scope of his employment. If the slanderous words used were provoked by abusive language and conduct upon the part of Black, and were the result simply of personal resentment and malice induced by such provocation, then under the Wetmore case, supra, there would be no liability on the part of the principal. This feature of the case was fully explained to the jury by the trial court.
An agent with a lower status than manager or officer of a corporation may bind his principal by a slanderous statement. This phase deals with the degree of proof required rather than in any distinction of the legal principle involved. Where *50 it is attempted to hold a corporation for the slander of a subordinate agent there must be proof of facts which show that such an agent was fully entrusted with the scope of employment touching the matter in question and with an implied authority to use the language employed. If this is not conferred, or conferred only upon an official of higher degree, then it is not within the scope of employment. Fensky v. Maryland Casualty Co., 264 Mo., 154, 174 S. W. Rep., 416.
The. legal principle underlying the facts presented in the instant case has been applied in the following cases:
Washington Gas Light Co. v. Lansden, 172 U. S., 534, was an action against a corporation for libel committed by its manager. There the corporation was released from liability because the manager had no authority over the subject-matter from which the libel arose: In the course of the opinion, at page 544, Mr. Justice Peckham said, “There must be evidence of some facts from which the authority of the agent to act upon or in relation to the subject-matter involved may be fairly and legitimately inferred by the court or jury.”
Payton v. People’s Credit Clothing Co., 136 Mo. App., 577, 118 S. W. Rep., 531, was an action against a corporation for slander uttered by its manager in connection with the settlement of an unpaid bill. It was there held that, as the scope of the manager’s employment included the collection and adjustment of accounts, and the slanderous words were spoken in relation to and in the performance of that duty, the manager was the alter *51 ego of the company, and where the language used was not merely the result of personal malice, the corporation would be liable.
Hypes v. Southern Ry. Co., 82 S. Car., 315, 64 S. E. Rep., 395, was also an action in slander against the corporation, for language used by its general division superintendent. It was there held that the corporation is liable for the slander uttered by its agent, while acting within the scope of his employment and in the actual performance of the duties of the corporation touching the matter in question.
In the case at bar the defamatory language was used by Adams in the prosecution and furtherance of his principal’s business; the subject-matter in question at the time was one which Adams had full power as manager to adjust and settle. From the record we are unable to say that there was any other or higher degree of agency employed by the company, to whom was assigned the specific duty of dealing with the matter involved and to whom had been confided fully the means and methods of adjustment. The jury passed upon these issues of fact and found against the defendant.
We are aware that in similar cases this modern and more liberal rule in favor of liability is not followed in some jurisdictions, but the weight of judicial authority supports it. The Kentucky court of appeals denies corporate liability for slander unless expressly authorized or ratified. Duquesne Distributing Co. v. Greenbaum, 135 Ky., 182, and Stewart Dry Goods Co. v. Heuchtker, 148 Ky., 228.
*52 Nor do we feel disposed to adhere to the rule applied by the supreme court of North Carolina to the facts developed in the case of Sawyer v. Norfolk & Southern Rd. Co., 142 N. C., 1. There the slander used by the superintendent of the railroad company was impliedly within the scope of his employment and in connection with the duty which he was fully authorized to perform. At least, it was an issue that should have been determined by the jury.
The judgment of the court of appeals is affirmed.

Judgment affirmed.

Johnson, Donahue, Wanamaker, Newman and Matthias, JJ., concur.